**Howard M. HENDERSON, Petitioner and Cross–Appellee,**

**v.**

**RSI, INC., and Colorado Compensation Insurance Authority, Respondents and Cross–Appellants,**

**and**

**The Industrial Claim Appeals Office of the State of Colorado, Subsequent Injury Fund, and Division of Labor, Respondents.**

No. 90CA0952.

Colorado Court of Appeals, Div. V.

Sept. 12, 1991.

Rehearings Denied Oct. 10 and Oct. 31, 1991.

Certiorari Denied Feb. 3, 1992.

Williams, Trine, Greenstein & Griffith, P.C., Michael A. Patrick, Boulder, for petitioner and cross-appellee.

John Berry, Paul Tochtrop, Denver, for respondents and cross-appellants RSI, Inc. and Colo. Compensation Ins. Authority.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Aurora Ruiz–Hernandez, Asst. Atty. Gen., Denver, for Respondents Indus. Claim Appeals Office, Subsequent Injury Fund and Div. of Labor.

Opinion by Judge NEY.

In this workers' compensation proceeding, review of an order of the Industrial Claim Appeals Panel is sought on behalf of the deceased claimant, Howard M. Henderson. The petition challenges that portion of the order computing the decedent's benefits on the basis of his earnings at the time of last exposure in 1977, rather than his earnings at the onset of disability in 1983. The State Compensation Insurance Authority (Authority) also seeks review, contending the Subsequent Injury Fund (SIF) is liable for contribution. We set aside the order.

The decedent worked for several employers in the commercial roofing and manufacture industry from 1955 through mid–1977, and during such work he was regularly exposed to asbestos-products and air-borne dust. His last occupational exposure to asbestos occurred during his employment with RSI, Inc., and his earnings during his last year at RSI, Inc., were $18,000. In 1977, the decedent changed fields of employment, working first in the solar energy field and subsequently as a landman or permit agent for Sefel Geophysical. His income increased substantially, and in the first six months of 1983, prior to his disability, he earned $24,841, plus benefits.

The decedent developed lung cancer in 1983 and gastrointestinal cancer in 1985. After the administrative hearing in this action, he died of recurrent cancer on January 14, 1990.

The Administrative Law Judge (ALJ) found that the lung and gastrointestinal

cancers were both caused by occupational asbestos exposure. He further found that the decedent had been in good physical condition and had worked without any physical or vocational limitations from the time of his last occupational exposure in 1977 until the diagnosis of his cancer in mid-1983.

In determining disability benefits, the ALJ interpreted the term "injury" in § 8-42-102(2), C.R.S. (1990 Cum.Supp.) to mean "last exposure." The ALJ therefore computed benefits based upon the statutory maximum compensation rate in effect in 1977 at the time of the decedent's last occupational exposure. The ALJ apportioned liability between the last employer, RSI, Inc., and the Subsequent Injury Fund (SIF), but ruled that the SIF was not liable for interest.

On review, the Panel affirmed the computation of benefits based on the 1977 compensation rate. The Panel, however, set aside the determination of SIF liability and ordered RSI's carrier, the Authority, to pay the entire award.

## I.

We first address the question of the SIF's liability. We agree with the Authority that the SIF is liable for compensation in excess of $10,000 under § 8-41-304(2), C.R.S. (1990 Cum.Supp.)

Section 8-41-304(2), formerly codified at § 8-51-112(2), C.R.S. (1986 Repl.Vol. 3B), requires SIF contribution in all cases in which an employee is disabled or dies because of occupational exposures in successive employments which result in

"silicosis, asbestosis, anthracosis, or poisoning or disease caused by exposure to radioactive materials, substances, or machines or to fissionable materials, *or any type of malignancy caused thereby.*" (emphasis added)

In *Subsequent Injury Fund v. State Compensation Insurance Authority*, 768 P.2d 751 (Colo.App.1988), *aff'd* 793 P.2d 580 (Colo.1990) we held that the phrase "any type of malignancy caused thereby" refers to all of the diseases enumerated in § 8-41-304(2) and not merely malignancies

caused by exposure to radioactive or fissionable materials. However, the claimant there had both asbestosis and lung cancer, and a specialist in pulmonary medicine testified that the lung cancer was caused by the combined effect of asbestosis and claimant's long history of heavy cigarette smoking.

In contrast, the decedent here was never diagnosed with asbestosis, and a specialist in toxicology testified that asbestosis and asbestos-induced cancer are separate and distinct diseases:

"Question: Does asbestosis ... turn into a lung cancer eventually? In other words, is there a connection between the benign condition and the cancerous condition?

"Answer: The conventional wisdom is that there is not, although there are some recent papers that now suggest that the scar which develops [in asbestosis] may be the site of the original malignant degeneration. That's [a] very new theory, and it's now being very hotly debated, but in general, we believe that there is no relationship between benign asbestosis and the malignant disease. You do not have to have asbestosis to get the cancer, and if you have asbestosis, you don't necessarily have to get cancer."

The toxicologist testified that asbestosis and asbestos-cancer of the lung and gastrointestinal tract are both caused by the ingestion of asbestos fibers and that both diseases have long latency periods of 10 to 40 years between the time of exposure and the clinical manifestation of the disease.

The Subsequent Injury Fund argues that § 8-41-304(2) should be strictly construed and that SIF liability should be limited to asbestosis and cancers which can be proven to be *caused by the disease of asbestosis*. The Authority, on the other hand, argues that the intent of the General Assembly in enacting § 8-41-304(2) was to limit the liability of successive employers *in asbestos-related* diseases and to encourage the employment of workers who were exposed to asbestos in previous employments. To further these policies, the Authority argues that § 8-41-304(2) should apply to asbes-

tos-induced cancer as well as asbestosis. We agree with the Authority.

■ Several principles of statutory construction assist us in resolving the issue. The cardinal rule in interpreting statutes is to ascertain and give effect to the legislative intent. *Johnson v. Industrial Claim Appeals Office*, 761 P.2d 1140 (Colo. 1988). If the legislative intent is unclear from either the statutory text or the statute's relation to other provisions of the Act, the court may consider the statute's legislative history, the state of the law prior to legislative enactment, and the statutory remedy created to cure the problem. Section 2–4–203, C.R.S. (1980 Repl.Vol. 1B); *Grover v. Industrial Commission*, 759 P.2d 705 (Colo.1988). The court must construe the entire statutory scheme in a manner that gives consistent, harmonious, and sensible effect to all of its parts. *Allee v. Contractors, Inc.*, 783 P.2d 273 (Colo.1989).

The statute now codified at § 8–41–304(2) was enacted in 1961 as part of the Colorado Occupational Disease Disability Act. *See* Colo.Sess.Laws 1961, ch. 165, § 81–18–13(2) at 500. The Occupational Disease Act was enacted in 1945, *see* Colo. Sess.Laws 1945, ch. 163 at 432, and remained in effect for 30 years until 1975, when the Act was *repealed* and merged into the Workmen's Compensation Act. *See* Colo.Sess.Laws 1975, ch. 71 at 304.

Until 1973, coverage under the Occupational Disease Act was limited to a schedule of specifically enumerated diseases and occupational hazards. *See* Colo.Sess.Laws 1973, ch. 271, § 81–18–9, § 81–18–10(1)(b) at 949–950. The initial schedule contained 21 specific diseases and hazards, including the disease of asbestosis, which was defined as:

> "a disease of the lungs, due to breathing air containing asbestos dust characterized anatomically by generalized diffuse fibrotic changes throughout both lungs, demonstrable by X-ray examination or by autopsy and resulting from any process or occupation involving the inhalation of asbestos dust."

*See* Colo.Sess.Laws 1945, ch. 163 at 433.

In 1959, a joint resolution of the General Assembly authorized a "complete and thorough study of the laws of the state governing occupational diseases and hazards, and the adequacy of the coverage for such occupational diseases." *See* Colo.Sess.Laws 1959 at 882 (H.J.R. 22). The study, issued in 1960 by the Colorado Legislative Council, entitled "Occupational Disease Disability Coverage," recommended that the Act be amended to provide expanded, or comprehensive, coverage for occupational diseases. *See* Colorado Legislative Council, Report to the General Assembly, Research Publ. # 38 (1960) (Report); *see also* Colo. Sess.Laws 1961, ch. 165, at 495.

The 132–page Report contains repeated references to "silicosis and other dust diseases." It noted that Colorado at that time had one of the nation's most restrictive occupational disease acts, with "narrow" SIF coverage (limited to accidental injuries) and scheduled, rather than comprehensive, occupational disease coverage. Report, *supra*, at 5–7. The Report stated that "liberalization" of the law was necessary for various reasons, including "rapidly rising costs of medical treatment and the complexity of many employment-connected diseases, which may be latent in appearing and difficult to diagnose." Report, *supra*, at 8.

Among the changes recommended in the Report was the expansion of coverage for silicosis, asbestosis, and the inclusion of coverage for "other dust diseases." Report, *supra*, at 27, 39, 42, 53. The Report specifically recommended that the "subsequent injury fund be expanded to include all occupational diseases," and it stated that such coverage was "definitely needed for dust and radiation diseases." Report, *supra*, at 72.

The Report, considered in its entirety, reflects a generalized concern for certain types of occupational hazards, *i.e.*, radiation and industrial dusts, including asbestos, rather than the specific clinical diseases produced by those hazards.

In response to the Report, the 1961 General Assembly adopted several changes to the Act, including a statute which provided

for limited Subsequent Injury Fund liability for occupational diseases. *See* Colo.Sess. Laws 1961, ch. 165 at 495.

The General Assembly, however, elected to retain scheduled, rather than comprehensive, occupational disease coverage. Consequently, since "asbestosis" was the only asbestos-related disease listed on the schedule, the newly-enacted statute providing for SIF liability was likewise limited to "asbestosis." *See* Colo.Sess.Laws 1961, ch. 165, § 81–18–13(2) at 500.

■ Scheduled coverage of occupational diseases was not eliminated until the Occupational Disease Disability Act was repealed in 1975 and merged into the Workmen's Compensation Act. The legislative intent in merging the two Acts was to provide a single unified Act for both accidental injuries and occupational diseases. *See* Tape Recording of the Senate Business Committee (May 19, 1975, 55th General Assembly); *Krumback v. Dow Chemical Co.*, 676 P.2d 1215 (Colo.App.1983).

The 1975 Act effectively eliminated scheduled coverage of occupational diseases by defining "occupational disease" as any:

"disease which results directly from the employment or the conditions under which work was performed, which can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as a proximate cause, and does not come from a hazard to which the worker would have been equally exposed outside of the employment."

*See* Colo.Sess.Laws 1975, ch. 71, § 8–41–108(3) at 293. Thus, occupational asbestosis and asbestos-induced cancer both meet the statutory definition of an occupational disease.

The General Assembly, however, failed to amend the predecessor statute to § 8–41–304(2) to correspond to the abolition of scheduled coverage. *See* Colo.Sess.Laws 1975, ch. 71, § 8–51–112(2) at 304. Thus § 8–41–304(2) continues to provide for SIF liability for "silicosis, *asbestosis*, anthraco-sis, or poisoning or disease caused by exposure to radioactive materials, substances or machines or to fissionable materials, or any type of malignancy caused thereby." (emphasis added)

■ In construing a statute, a court must seek to promote the objective of the law, not simply the letter of the law. *Interest of R.C.*, 775 P.2d 27 (Colo.1989). Thus, a statutory construction that would defeat the evident legislative intent will not be followed. *Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985).

■ The legislative intent underlying § 8–41–304(2) is to allay the insurance and liability costs associated with the radiation and industrial dust hazards enumerated in § 8–41–304(2) by imposing a portion of the liability on the SIF in cases in which workers have been injuriously exposed in the course of successive employments. Since the SIF is financed by mandatory employer and carrier contributions, § 8–46–102, C.R.S. (1990 Cum.Supp.), the costs associated with these specific occupational hazards are not placed disproportionately on successive employers but are spread throughout the industry. As a result, there is no financial disincentive to employers in hiring workers who have sustained injurious exposures in previous employments. *See Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991).

We conclude that to limit SIF liability under § 8–41–304(2) to asbestosis and cancer *caused by asbestosis* and exclude asbestos-induced cancers would produce incongruous and arbitrary results inconsistent with the legislative intent and with the constitutional guarantee of equal protection.

Because according to the evidence presented here there is no scientific consensus that the disease of asbestosis causes cancer, the applicability of § 8–41–304(2) could vary in factually analogous cases depending on the nature of the expert testimony and other evidence presented and the assessment of such evidence by different administrative law judges. Finally, since asbestosis is a lung disease, SIF would be

potentially liable for malignancies of the lung but not for asbestos-induced cancer in other areas of the body.

We see no reasonable basis for such disparate results. Asbestosis and asbestos-induced cancer share common characteristics which § 8–41–304(2) was designed to address: both diseases are caused by the ingestion of asbestos fibers, both diseases have 10 to 40 year latency periods, and both diseases frequently lead to total disability or death, requiring costly medical, disability, and dependents benefits. To require SIF contribution for asbestosis, but deny contribution for asbestos-induced cancer, would produce an inequitable and unjust, if not unconstitutional, result. *See Higgs v. Western Landscaping & Sprinkler Systems, Inc.*, 804 P.2d 161 (Colo. 1991).

We must presume the General Assembly intended a just and reasonable result. Section 2–4–201(1)(c), C.R.S. (1980 Repl.Vol. 1B). Additionally, if a statute is susceptible to two interpretations, one which would uphold the statute and its constitutionality, the other which would strike it down, it is the court's duty to apply a constitutional interpretation. *People v. Fagerholm*, 768 P.2d 689 (Colo.1989); *Parrish v. Lamm*, 758 P.2d 1356 (Colo. 1988).

Accordingly, we hold that SIF liability under § 8–41–304(2) includes liability for asbestos-induced cancer. Hence, the ALJ's order apportioning liability between the insurer and SIF must be reinstated.

## II.

We next address the contentions raised on behalf of the decedent. The first contention is that the decedent's benefits should have been computed based upon his wages and the statutory maximum wage in effect at the onset of his disability in 1983, rather than the date of his last injurious exposure. We agree.

Section 8–42–102(2), C.R.S. (1990 Cum. Supp.), formerly § 8–47–101(3), C.R.S. (1986 Repl.Vol. 3B), provides:

"Average weekly wages for the purpose of computing benefits ... shall be calculated upon the monthly, weekly, daily, hourly, or other remuneration which the injured or killed employee was receiving *at the time of the injury....*" (emphasis added)

The Workers' Compensation Act defines the term "injury" to mean *disability or death* resulting from accident or occupational disease. Section 8–40–201(2), C.R.S. (1990 Cum.Supp.). Accordingly, the term "injury" has been construed by our supreme court to mean a *compensable injury. City of Boulder v. Payne*, 162 Colo. 345, 426 P.2d 194 (1967). *See generally* 1B A. Larson, *Workmen's Compensation Law* § 42.00 (1991).

Consistent with the statutory definition and judicial construction, our court has consistently held that an occupational disease is compensable only if it results in disablement and that rights and liabilities for occupational diseases are governed by the law in effect at the onset of disability. As stated in *Mendisco & Urralbura Mining Co. v. Johnson*, 687 P.2d 492 (Colo. App.1984):

"Rights and liabilities for occupational diseases under the Colorado Workmen's Compensation Act accrue at the time the disability for which compensation is sought occurs. Such rights and liabilities are therefore determined by the law in effect at the time an occupational disease manifests itself...."

*See also City of Littleton v. Schum*, 38 Colo.App. 122, 553 P.2d 399 (1976); *Romero v. Standard Metals Corp.*, 29 Colo.App. 455, 485 P.2d 927 (1971). *See generally* 4 A. Larson, *Workmen's Compensation Law*, § 95.25(a) (1990).

The only exception that we have recognized to this general rule is when an employee continues to work for an employer after an occupational disease has become disabling and incurs increased disability. *Martinez v. Industrial Commission*, 40 Colo.App. 485, 580 P.2d 36 (1978). That exception is not applicable here, and the evidence is uncontroverted that the decedent did not become disabled until mid–

1983. Therefore, the Panel's order is in error, and decedent's benefits must be determined, based upon his wages and the statutory maximum rate in effect at the onset of his disability in 1983.

 Further, we agree that the decedent's survivors are entitled to interest on benefits payable by the SIF. *See Subsequent Injury Fund v. Trevethan*, 809 P.2d 1098 (Colo.App.1991). Therefore, the order entered on remand should reflect the inclusion of interest.

The Panel's order is set aside and the cause is remanded with directions that the benefits due decedent be calculated based upon his wages and the statutory maximum rate in effect at the time of his disability in 1983. Also, that position of the ALJ's order apportioning liability for benefits between the SIF and RSI, Inc., should be reinstated and the amount due from the SIF should be modified.

PLANK and JONES, JJ., concur.