**SUBSEQUENT INJURY
FUND, Petitioner,**

v.

**Marian L. KING; Walter Burnett, and/or Union Carbide Nuclear; Minnie Tsosie, Cecil Bunker d/b/a CW Bunker & Company; the Colorado Compensation Insurance Authority; and the Industrial Claim Appeals Office of the State of Colorado, Respondents.**

No. 97CA1082.

Colorado Court of Appeals,
Div. A.

May 14, 1998.

Rehearing Denied June 25, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Roxane D. Baca, Assistant Attorney General, Hollyce H. Farrell, Assistant Attorney General, Denver, for Petitioner.

No Appearance for Respondent Marian L. King.

Dufford & Brown, P.C., Brandee DeFalco-Galvin, Douglas P. Ruegsegger, Denver; Laurie A. Schoder, Colorado Compensation Insurance Authority, Denver, for Respondents Walter Burnett, and/or Union Carbide Nuclear, Cecil Bunker, d/b/a CW Bunker & Company, and the Colorado Compensation Insurance Authority.

No Appearance for Respondent Minnie Tsosie.

No Appearance for the Industrial Claim Appeals Office.

Opinion by Judge PIERCE.*

In this consolidated appeal of two separate workers' compensation proceedings, the Sub-

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.

sequent Injury Fund (SIF) seeks review of the final orders issued by the Industrial Claim Appeals Office (Panel) which held it liable in each case for a portion of the death benefits awarded to Minnie Tsosie and Marian L. King (claimants). We affirm.

Claimants are the widows of uranium miners who contracted lung cancer as the result of their occupational exposure to radon. In each case, diagnosis of the lung cancer occurred in 1993 and the miners died in the fall of 1994.

In each case, the Panel found that the SIF was liable for all death benefits in excess of $10,000 because diagnosis of the lung cancer had occurred prior to April 1, 1994, the effective date for closure of the fund, although the death of each decedent occurred after that date.

■ The SIF contends that the Panel erred in its determination that coverage existed under the SIF for such benefits. We disagree.

At the time decedents were diagnosed with lung cancer, Colo. Sess. Laws 1990, ch. 62, § 8–41–304(2) at 480, provided that:

> In any case where an employee ... becomes disabled from ... disease caused by exposure to radioactive materials ... in the event death results ... and, if such employee has been injuriously exposed to such diseases while in the employ of another employer during the employee's lifetime, the last employer or that employer's insurance carrier, if any, shall be liable only for compensation and medical benefits as provided by articles 40–47 of this title, including funeral expenses and death benefits, up to the amount of ten thousand dollars. In addition to such benefits, such employee or, in the event of death, the employee's dependents, shall receive additional benefits equivalent to the difference between the amount paid by the last employer or that employer's insurance carrier, if any, and the total amount of benefits payable under said articles. Such additional benefits shall be paid out of the subsequent injury fund created by the provisions of section 8–46–101.

In 1993, the General Assembly amended § 8–41–304(2), effective April 1, 1994, by deleting the language related to the liability of the SIF. Colo. Sess. Laws, ch. 351 at 2140. In its amended form, § 8–41–304(2), C.R.S. 1997, renders the "last employer" liable for all benefits attributable to the exposure to radioactive materials.

In the same legislative bill, an amendment was adopted such that § 8–46–104, C.R.S. 1997, now provides that:

> No cases shall be accepted into the subsequent injury fund ... *or for occupational diseases occurring on or after April 1, 1994.* When all payments have been made for all cases accepted into the fund, any remaining balance shall revert to the general fund. (emphasis supplied)

*See* Colo. Sess. Laws 1993, ch. 351 at 2142. The changes to § 8–46–104 took effect on July 1, 1993. Colo. Sess. Laws 1993, ch. 351 at 2145. This amendatory legislation relates to occupational diseases and the benefits payable therefrom which occurred after April 1, 1994.

■ The SIF relies upon the "rule of independence" to argue that, since the claims for death benefits at issue here did not arise until after the fund's date of closure, its liability should be determined based upon the present version of § 8–41–304(2).

■ The "rule of independence" is based upon the recognition that there are two distinct and independent rights, one for the benefit of the worker, the other for the benefit of his or her dependents. *Hoffman v. Hoffman*, 872 P.2d 1367 (Colo.App.1994). Under this principle, the rights and liabilities of the parties to a workers' compensation claim for death benefits accrue or vest at the time of death, to be determined by the statutes in effect at that time. *Renz v. Larimer County School District Poudre R–1*, 924 P.2d 1177 (Colo.App.1996). Consequently, determination of the death benefit amount and any applicable offset should be based on the law in effect on the date of the employee's death. *Hoffman v. Hoffman, supra.*

However, we conclude that the ultimate concern here involves the extent of the SIF's liability for the consequences of a worker's occupational disease occurring prior to the fund's closure, not the date when the dependent's claims for death benefits vested. Consequently, we are not persuaded that the rule of independence determines which version of § 8–41–304(2) applies. We, therefore, turn to the standard rules of statutory construction.

■ The cardinal rule governing the interpretation of statutes is to ascertain and give effect to the intent of the General Assembly. *Henderson v. RSI, Inc.*, 824 P.2d 91 (Colo. App.1991). Interpretations that would defeat the obvious purpose of the statute should be avoided. *McCallum v. Dana's Housekeeping*, 940 P.2d 1022 (Colo.App.1996).

■ When, as here, a plain reading of the statute does not reveal the General Assembly's intent, such may be discerned through a consideration of various indicators, including the balance of the enactments relating to the same subject matter and the statute's object and purpose. *Gianetto Oil Co. v. Industrial Claim Appeals Office*, 931 P.2d 570 (Colo. App.1996).

■ Further, statutes are to be construed as a whole to give a consistent, harmonious, and sensible effect to all of their parts. When a court interprets a comprehensive legislative · scheme, it must give meaning to all portions thereof and construe the statutory provisions to further the legislative intent. *Monfort Transportation v. Industrial Claim Appeals Office*, 942 P.2d 1358 (Colo.App.1997).

A review of the legislative history surrounding the enactment of the amendments to §§ 8–41–304(2) and 8–46–104 reveals that the fund was to be closed because it had become insolvent. While the General Assembly intended the closure to occur expeditiously, committee discussions also show that the legislators were concerned that it be carried out in a fair manner.

Further, the legislators recognized that closure meant only that new cases would not be accepted into the fund and that its liability would extend many years into the future for those cases admitted prior to closure.

The General Assembly did not intend to exonerate the fund from its existing liability, but did anticipate that many of the cases accepted prior to closure would be settled with lump-sum payments. Hearings on H.B. 1280 before the Senate Committee on Business Affairs and Labor, 58th General Assembly, Second Session (April 1, 1992); Hearings on H.B. 1280 before the Conference Committee, 58th General Assembly, Second Session (May 6, 1992). Indeed, the fund is still in operation.

The legislative history also discloses that § 8–41–304(2) was amended to bring it into conformance with the "last employer" rule which the General Assembly essentially adopted by virtue of the fund's closure. Hearings on H.B. 1356 before the Senate Committee on State Veterans and Military Affairs, 59th General Assembly, First Regular Session (May 11, 1993).

Based upon the legislative history, we conclude, as did the Panel, that it would be anomalous to interpret §§ 8–46–104 and 8–41–304(2) as imposing liability on the SIF for disability and medical benefits over $10,000 for those diseases that occurred before April 1, 1994, but not for the benefits resulting when the disease leads to a death after that date. The fact that § 8–46–104 distinguishes only between injuries and occupational diseases rather than disability and death, further convinces us that such an interpretation would be misguided.

The SIF urges that a contrary interpretation is required by the decision in *In re Claim of Green*, 789 P.2d 481 (Colo.App. 1990), which addressed similar closure language related to the phase out of the Major Medical Insurance Fund. However, because that decision concluded that a heart attack, even though it was causally related to the industrial injury, constituted a separate and distinct injury, we agree with the Panel that it is distinguishable. In *Green*, the death was a separate cause of action, not a claim based on continuing illness. Here, both decedents died as a result of the progression of their disease. Consequently, we do not view

either death as a separate occupational disease for purposes of § 8–46–104.

Therefore, we hold that the Panel correctly determined that the SIF was liable for the death benefits claimed in accordance with the version of § 8–41–304(2) in effect when the occupational diseases suffered by decedents occurred.

The orders are affirmed.

CASEBOLT and KIRSHBAUM*, JJ., concur.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. 1997.