**Michael LEMING, Petitioner and Cross–Respondent,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, Respondent,**

and

**Rockwell International and Travelers Insurance, Respondents and Cross–Petitioners.**

**No. 01CA0865.**

Colorado Court of Appeals, Div. I.

May 9, 2002.

As Modified on Denial of Rehearing July 25, 2002.

Certiorari Denied Jan. 27, 2003.

Brauer, Buescher, Valentine, Goldhammer, Kelman & Eckert, P.C., Joseph M. Goldhammer, Denver, Colorado, for Petitioner and Cross–Respondent.

Ken Salazar, Attorney General, Mark Gerganoff, Assistant Attorney General, Denver, Colorado, for Respondent.

Blackman & Levine, L.L.C., Lawrence D. Blackman, Lynda S. Newbold, Denver, Colorado, for Respondents and Cross–Petitioners.

Opinion by Judge KAPELKE.

In this workers' compensation proceeding, petitioner, Michael Leming (claimant), as well as respondents, Rockwell International and Travelers Insurance (collectively employer), seek review of a final order of the Industrial Claim Appeals Office (Panel) upholding the order of the Administrative Law Judge (ALJ). The ALJ awarded claimant medical benefits, but determined that he is not entitled to disability benefits. We affirm the Panel's order as to medical benefits and set it aside as to disability benefits.

On March 12, 1993, claimant was diagnosed with chronic beryllium disease (CBD). The parties stipulated that he had contracted the disease as a result of exposures during his work with employer, which ended in 1979.

In 1993, claimant's condition appeared to be subclinical based upon test results indicating excellent exercise tolerance, near normal pulmonary function, and a near normal CT scan of the chest. His test results remained at the near normal level in 1997.

On October 13, 1998, claimant's authorized treating physician placed him at maximum medical improvement (MMI) as of August 27, 1998, and assessed a five percent whole person impairment based upon his cough, shortness of breath, and mild gas exchange abnormality at maximum exercise.

In a report dated March 17, 1999, the treating physician reiterated those findings and opined that claimant had experienced an onset of disability that coincided with the date of his diagnosis in May 1993. The physician also stated that claimant "had physical impairment sufficient to affect his functioning in the labor market from that date, based on symptoms and based on evidence of a gas exchange abnormality detected during exercise beginning in 1993, along with his pulmonary physiology." The physician recommended continued monitoring of claimant's condition.

A physician selected by employer evaluated claimant in May 1999. In his report, the physician found that claimant had no present pulmonary or other disability that could be related to his probable subclinical CBD and also found that a date of onset of disability could not then be determined. He further stated: "[S]ince one cannot improve from a normal state, it is my opinion that [claimant] reached maximum medical improvement on 25 September 1992, and clearly, by the AMA Guides Third Edition Revised, has a 0% permanent partial impairment."

Claimant then underwent a division-sponsored independent medical examination (DIME) on September 13, 1999. The DIME physician found that claimant

> [p]robably has subclinical chronic beryllium disease (CBD). However, ... when one takes into account his variable and often poor effort and cooperation with the pulmonary function tests, there has been no significant change since he was first diagnosed in February, 1993. Further he continues to have a clearly normal exercise capacity.... Since [claimant] has no present pulmonary or other disability that could be related to his probable subclinical CBD, one cannot give a date of onset of disability at this time. Indeed, given the stability of his cardiopulmonary function since 1993, it is unlikely, although not impossible, that he would develop a disability in the future.... Since one cannot improve from a normal state, it is my opinion that [claimant] reached maximum medical improvement on [August 27, 1998], and clearly, by the AMA Guides to the Evaluation

of Permanent Impairment, ed 3 (revised) has a 0% permanent partial impairment.

After receiving the DIME results, employer filed an application for a hearing to consider medical benefits and permanent partial disability benefits (PPD). In claimant's response, he stated he was seeking only medical benefits and asserted that consideration of the issues of PPD and MMI was premature.

At the hearing before the ALJ, claimant indicated he was not contesting the DIME. He acknowledged he had never suffered the onset of disability and stated that, although he had the physical, verifiable signs of the disease, he did not have any impairment. Thus, he again maintained that consideration of the issues of MMI and PPD were premature and that the only issue for determination was his entitlement to medical benefits. Employer argued that, despite the zero percent impairment rating, claimant suffered a disability. According to employer, because the onset of the disability occurred in any event more than five years after claimant's last exposure, under § 8-41-206, C.R.S.2001, his disease was conclusively presumed to be unrelated to his exposure while working for employer.

The ALJ found that claimant was entitled to medical benefits. On the issue of disability, the ALJ found that the medical opinions of both the treating physician and the employer's physician established that claimant had experienced the onset of disability more than five years after his last injurious exposure. However, the ALJ concluded it would be unjust to dismiss a disability claim pursuant to § 8-41-206 because that statute excepts other occupational diseases, such as asbestosis and silicosis, whose symptoms also may remain latent until long after exposure. Although the ALJ recognized that no specific exception existed for CBD, he nevertheless concluded that because CBD was sufficiently similar to the expressly excepted diseases, it was "exempt by implication" from the conclusive presumption in the statute. The ALJ went on to find, however, that claimant had failed to overcome the DIME physician's finding of MMI and zero impairment rating and held that "claimant's claim for perma-

nent medical impairment benefits is denied and dismissed."

On review, the Panel upheld the ALJ's order, but on different grounds. It agreed with claimant that § 8–41–206 applies only to disability benefits and not to medical benefits. However, the Panel rejected the ALJ's conclusion that CBD would fall within the exceptions to the presumption of noncausation in § 8–41–206. The Panel concluded that, under the undisputed facts, because claimant could never prove he had sustained any disability as a result of CBD within five years of his last exposure, the denial of permanent disability benefits was correct as a matter of law. The Panel found it unnecessary to reach claimant's argument that the ALJ's rulings as to MMI and permanent impairment were premature.

I.

■ We first address employer's contention that the Panel and the ALJ erred in concluding claimant was entitled to medical benefits even though he could not establish he had sustained an onset of disability within five years of his last exposure. Because we conclude that § 8–41–206 does not apply to claims for medical benefits, we find no error.

Section 8–41–206 provides:

Any disability beginning more than five years after the date of injury shall be conclusively presumed not to be due to the injury, except in cases of disability or death resulting from exposure to radioactive materials, substances, or machines or to fissionable materials, or any type of malignancy caused thereby, or from poisoning by uranium or its compounds, or from asbestosis, silicosis, or anthracosis.

The statute has been described as a rule of evidence mandating a finding of no causal connection between an injury and a disability when the disability begins more than five years after the injury. *Ricks v. Indus. Claim Appeals Office,* 809 P.2d 1118 (Colo. App.1991).

■ The onset of a disability occurs when the occupational disease impairs the claimant's ability to perform his or her regular employment effectively and properly, or when it renders the claimant incapable of returning to work except in a restricted capacity. *Ortiz v. Charles J. Murphy & Co.,* 964 P.2d 595 (Colo.App.1998).

In *Wal–Mart Stores, Inc. v. Industrial Claims Office,* 989 P.2d 251 (Colo.App.1999), a division of this court recognized that medical benefits and disability benefits are treated differently for various purposes and that a worker's need for medical treatment may not necessarily coincide with the disability. Accordingly, the division held that a claimant suffering from an occupational disease is entitled to reasonably necessary medical benefits even if the disease has not yet become a disability.

Employer urges that any reliance upon *Wal–Mart Stores,* is misplaced here, however, because the effect of § 8–41–206 was not addressed or at issue there. We are not persuaded.

■ When the plain language of a statute is clear and unambiguous, we must apply it as written. *Holliday v. Bestop, Inc.,* 23 P.3d 700 (Colo.2001).

Here, the plain language of § 8–41–206 refers to "any disability" and does not purport to create any conclusive presumption of noncausation with respect to *medical benefits* relating to an occupational disease. Further, as noted, under *Wal–Mart Stores,* medical benefits may be recovered even before the disease has caused a disability. Accordingly, the Panel properly determined that the statute was inapplicable to claimant's claim for medical benefits and that the award of such benefits should be upheld.

II.

■ Claimant contends that the Panel erred in applying § 8–41–206 because he had not yet sustained an onset of disability as a result of CBD. We agree that determination of the issue of permanent disability was premature.

In holding that claimant could never be entitled to permanent disability benefits with respect to his CBD, the Panel applied the conclusive presumption of noncausation in § 8–41–206. In so doing, the Panel expressly declined to consider claimant's argument that the ALJ's rulings on MMI and permanent impairment were premature. On appeal, however, counsel for the ICAO agreed with claimant that consideration of the permanent disability issue was premature under the circumstances.

Significantly, claimant has not claimed any disability benefits and, indeed, has consistently argued that there has been no onset of disability as a result of his CBD.

As noted, the onset of a disability occurs when the occupational disease impairs the claimant's ability effectively and properly to perform his or her regular employment or renders the claimant incapable of returning to work except in a restricted capacity. *Ortiz v. Charles J. Murphy & Co., supra.*

Here, the DIME physician found that claimant's CBD was "subclinical" and concluded that claimant "qualifies for 0% impairment rating." The findings of a DIME physician are binding as to MMI and permanent impairment unless overcome by clear and convincing evidence. Section 8–42–107(8)(b)–(c), C.R.S.2001.

Clear and convincing evidence is evidence demonstrating it is "highly probable" the DIME physician's rating is incorrect. *Metro Moving & Storage Co. v. Gussert,* 914 P.2d 411 (Colo.App.1995). Therefore, to overcome the DIME physician's opinion, the evidence must establish that it is incorrect. Such evidence must be unmistakable and free from serious or substantial doubt. *DiLeo v. Koltnow,* 200 Colo. 119, 613 P.2d 318 (1980).

The only physician who testified at the hearing before the ALJ said he could not give an opinion as to onset of disability because he could not find any measurable impairment. When asked if symptoms such as fatigue, shortness of breath, and coughing might meet the definition of disability as "impairment of the ability effectively or properly to perform one's employment," he agreed "this would fall under the category of a disability." He went on to testify, however, that he nevertheless found no onset of disability, because the described symptoms were not related to claimant's CBD.

As noted, in his 1999 report, the DIME physician stated that because claimant "has no present pulmonary or other disability that could be related to his probable subclinical CBD, one cannot give a date of onset of disability at this time." He further stated, "it is unlikely, although not impossible, that he would develop a disability in the future."

The ALJ did not find that the DIME's opinion had been overcome by clear and convincing evidence. Indeed, he expressly found to the contrary. While one physician had opined that claimant had a five percent impairment attributable to his CBD, the ALJ found that claimant had zero percent impairment.

Further, no one has suggested that claimant previously had an impairment and has since improved. In fact, the DIME physician repeated the statement of employer's physician that "one cannot improve from a normal state."

Thus, we agree with claimant that there is no evidence that his CBD had ever actually impaired his effective and proper performance of his employment or resulted in work restrictions. *See Ortiz v. Charles J. Murphy & Co., supra.*

Under the circumstances, we conclude that no onset of disability was established. Accordingly, consideration of the issue of MMI and permanent disability was premature, as was consideration by the ALJ and the Panel of § 8–41–206 in this regard.

In view of our holding, we need not address the constitutionality of § 8–41–206 or the other contentions raised on appeal.

The Panel's order is affirmed as to the award of medical benefits and set aside as to the determination regarding permanent disability benefits.

Judge METZGER and Judge ROTHENBERG concur.