**SEARS DISTRIBUTION CENTER and Liberty Mutual Fire Insurance Company, Petitioners,**

**v.**

**INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO and Pete Ramos, Respondents.**

No. 04CA0277.

Colorado Court of Appeals, Div. I.

Oct. 21, 2004.

Law Office of Jonathan S. Robbins, David G. Kroll, Denver, Colorado, for Petitioners.

Ken Salazar, Attorney General, Y.E. Scott, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Law Office of O'Toole & Sbarbaro, P.C., John A. Sbarbaro, Denver, Colorado, for Respondent Pete Ramos.

MARQUEZ, J.

In this workers' compensation proceeding, Sears Distribution Center and its insurer, Liberty Mutual Insurance Company (collectively employer), seek review of the final order of the Industrial Claim Appeals Office (Panel) holding that § 8–41–301(2)(b), C.R.S. 2004, does not require a claimant's award of mental impairment benefits to be reduced by his award of temporary disability benefits. We affirm.

In October 1999, Pete Ramos (claimant) sustained an industrial injury to his right shoulder and neck. He received six weeks of temporary total disability (TTD) benefits for the period from December 20, 1999, to January 30, 2000, for his physical injuries and reached maximum medical improvement (MMI) in August 2000.

Following an evidentiary hearing, the administrative law judge (ALJ) awarded claimant permanent partial disability (PPD) benefits based upon a 33% whole person impairment rating composed of a 14% sched-

uled loss of the arm at the shoulder, a 15% whole person impairment of the neck, a 5% mental impairment for depression, and an 11% whole person impairment of the shoulder.

A second hearing resulted in an order calculating the amount of benefits awarded.

On review, the Panel modified the benefits calculation. In so doing, it concluded that § 8–41–301(2)(b) did not require reduction of the mental impairment benefits by the TTD benefits paid to claimant because the TTD benefits were not attributable to the mental impairment.

Employer contends that the Panel improperly interpreted § 8–41–301(2)(b) and that it erred by failing to reduce claimant's award of mental impairment benefits from twelve weeks to six weeks. We disagree.

Section 8–41–301(2)(b) provides, in pertinent part, that:

> [W]here a claim is by *reason of mental impairment,* the claimant shall be limited to twelve weeks of medical impairment benefits which shall be in an amount not less than one hundred fifty dollars per week and not more than fifty percent of the state average weekly wage, *inclusive of any temporary disability benefits.*

(Emphasis added.)

Employer concedes that the temporary benefits awarded to claimant in this case were paid on account of his physical injuries which kept him from work for six weeks. It is undisputed that no temporary benefits were paid for mental impairment. Employer, nevertheless, argues that the Panel erred in awarding a full twelve weeks of medical impairment benefits for claimant's mental impairment because the phrase "inclusive of any temporary disability benefits" contains no restriction and requires an offset regardless of the reason such benefits were paid. We agree with the Panel that a plain reading of § 8–41–301(2)(b) contemplates an examination of the reason for the temporary disability benefits and that only temporary disability benefits paid on account of mental impairment are subject to the offset against temporary disability benefits.

When a reviewing court construes a statute, it must determine and give effect to the intent of the General Assembly by affording the language of the statute its plain and ordinary meaning. *City & County of Denver v. Indus. Claim Appeals Office,* 2004 WL 1900343, —— P.3d —— (Colo.App. No. 03CA1769, Aug. 26, 2004).

■ We must also construe the statute as a whole, in an effort to give "consistent, harmonious and sensible effect to all its parts." *Carlson v. Ferris,* 85 P.3d 504, 508 (Colo.2003)(quoting *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002)).

■ We do not depart from the plain meaning unless it leads to an absurd result. *Peregoy v. Indus. Claim Appeals Office,* 87 P.3d 261 (Colo.App.2004). We also give deference to the Panel's interpretation of workers' compensation statutes and will set that interpretation aside only if it is inconsistent with the clear language of the statute or the legislative intent. *Jones v. Indus. Claim Appeals Office,* 87 P.3d 259 (Colo.App.2004).

When the plain language of a statute is clear and unambiguous, we must apply it as written. *Leming v. Indus. Claim Appeals Office,* 62 P.3d 1015 (Colo.App.2002). Where a statute is ambiguous on its face, we resort to extrinsic aids to construction that are probative of the General Assembly's intent. These aids include consideration of the legislative history of the statute. *United Airlines, Inc. v. Indus. Claim Appeals Office,* 993 P.2d 1152 (Colo.2000).

Here, we conclude the statute is clear and unambiguous.

The phrase "where a claim is by reason of mental impairment" is restrictive and signals that all parts of subsection (2)(b) apply only to compensation benefits paid as the result of a mental impairment. A contrary interpretation would, as urged here, operate to penalize claimants who sustain a physical injury and experience a period of temporary disability that is unrelated to a mental impairment. The statute contains no suggestion that such an anomalous result is the intended effect.

Employer argues that the statute is ambiguous and relies on the history of § 8–41–301(2), C.R.S.2004, which was amended in

1999. *See* Colo. Sess. Laws 1999, ch. 103 at 299–300. Even if we were to consider that history, employer's claim would fail.

Prior to 1999, mental impairment arising out of or associated with an accidental physical injury was compensated under § 8–42–107, while a mental impairment occurring without any physical injury was compensated pursuant to § 8–41–301(2). *See* Colo. Sess. Laws 1991, ch. 219 at 1294–95, 1306–11. The distinction between the two types of injuries reflected the General Assembly's concern that where a physical injury was absent, claims for disability based upon emotional or psychological causes were less subject to direct proof and more susceptible to being frivolous in nature. *Oberle v. Indus. Claim Appeals Office,* 919 P.2d 918 (Colo.App.1996).

As part of the 1999 amendments, § 8–41–301(2)(a.5) was added. Colo. Sess. Laws 1999, ch. 103 at 300. It changed the definition of "mental impairment" for purposes of § 8–41–301(2) to include "a disability arising from an accidental physical injury that leads to a recognized permanent psychological disability." Thus, prior to 1999, the offset could apply only to temporary disability benefits that were paid because of a mental impairment. *See City of Thornton v. Replogle,* 888 P.2d 782 (Colo.1995)(setting forth history of statute prior to 1999 amendments).

Relying on the expansion of the mental impairment definition and the corresponding absence of any language restricting the offset, employer argues that the twelve-week limitation includes all temporary disability benefits, even those received strictly as a direct result of a physical injury. Employer also notes that the title for House Bill 99–1157, which enacted the 1999 amendments, stated that it was partially concerned with "limiting benefits for mental stress." Colo. Sess. Laws 1999, ch. 103 at 298. Employer maintains that the Panel's reading conflicts with that expressed intention.

However, the legislative history for the bill, which also included amendments to § 8–42–107, reveals that the changes were designed to address a perceived "loophole" that enabled a claimant who had sustained a scheduled injury to obtain a whole person impairment rating by combining with it a claim for mental impairment arising out of that same physical injury. Hearings on H.B. 1157 before the House Committee of Business Affairs & Labor, 62d General Assembly, 1st Session (Jan. 26, 1999). Therefore, the bill was intended to limit benefits for mental stress by precluding conversion of a scheduled injury into a "formula" injury. One speaker also suggested that the change to the mental impairment definition was intended to recognize the existence of permanent psychological disability and to clarify the rating process to focus on clinical treatment. Hearings on H.B. 1157 before the Senate Committee on Workers' Compensation, Veterans, & Military Affairs, 62d General Assembly, 1st Session (Feb. 17, 1999)(remarks of Dr. Kevin Reilly, neuropsychologist).

None of the legislators or speakers specifically addressed the effect of the changes on the twelve-week limit or otherwise indicated any intent to increase the temporary disability offset. There was also no general discussion indicating that additional limits on mental impairment benefits were an intended goal. Finally, we fail to understand how the stated legislative purposes of recognizing permanent psychological disability and avoiding the conversion of scheduled injuries would be furthered by imposing the temporary disability offset in cases, such as this, where the period of temporary disability occurred because of a physical injury and ended prior to the onset of the mental impairment.

Therefore, we are not only satisfied that a plain reading of the statute supports the Panel's interpretation, but we also conclude that employer's reliance on the legislative history is misplaced.

The order is affirmed.

Judge CASEBOLT and Judge ROY concur.