**UNION CARBIDE CORPORATION and American Motorists Insurance Company, Petitioners,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO; Subsequent Injury Fund; and Dorothy W. Spencer, Respondents.**

**No. 05CA0081.**

Colorado Court of Appeals, Div. I.

Dec. 1, 2005.

§ 24–51–1105, C.R.S.2005.

 

White & Steele, PC, Ted A. Krumreich, Denver, Colorado, for Petitioners.

No Appearance for Respondent Industrial Claim Appeals Office.

John W. Suthers, Attorney General, Vincent E. Morscher, Assistant Attorney General, Denver, Colorado, for Respondent Subsequent Injury Fund.

Dawes and Harriss, PC, Robert C. Dawes, Durango, Colorado, for Respondent Dorothy W. Spencer.

WEBB, J.

The single issue in this case is whether Union Carbide Corporation and its insurer, American Motorists Insurance Company (collectively employer), should be solely liable for workers' compensation death benefits payable to Dorothy W. Spencer (claimant), or whether the Subsequent Injury Fund (SIF) should share in that liability. We conclude that only employer is liable, and therefore affirm the order of the Industrial Claim Appeals Office (Panel).

The dispositive facts are undisputed. Allen Y. Spencer (decedent) worked as an underground uranium miner from 1959 until 1984, and worked for employer for the last eighteen years of his career. In 1999, he died of silicosis or pneumoconiosis caused by exposure to radioactive materials. These illnesses had been diagnosed before 1994. Claimant, as decedent's spouse, sought death benefits.

The law concerning the occupational diseases that afflicted decedent was amended between the date of diagnosis and the date of death. Under the prior law, the last employ-

er was liable for only the first $10,000 of benefits, and any remaining benefits were paid from the SIF. Colo. Sess. Laws 1990, ch. 62, § 8–41–304(2) at 480–81; *see Henderson v. RSI, Inc.,* 824 P.2d 91 (Colo.App.1991)(applying pre–1994 law in finding that the SIF is liable for compensation in excess of $10,000).

In 1993, the General Assembly amended § 8–41–304(2), effective April 1, 1994, to delete any reference to the SIF, thereby rendering the last employer liable for all compensation attributable to the listed diseases. Colo. Sess. Laws 1993, ch. 351 at 2140, 2145. At the same time, § 8–46–104 was amended to provide that no cases would be accepted into the SIF "for occupational diseases *occurring* on or after April 1, 1994." Colo. Sess. Laws 1993, ch. 351 at 2142 (emphasis added); *see Subsequent Injury Fund v. King,* 961 P.2d 575 (Colo.App.1998)(discussing legislative history). Hence, this case turns on the meaning of "occurring."

Employer argued before the administrative law judge (ALJ) and argues on appeal that because decedent's disease was diagnosed before April 1994, it "occurred" prior to that date. Therefore, relying on the earlier version of § 8–41–304(2), employer sought to shift to the SIF all but $10,000 in liability.

The ALJ concluded that "occurring" required actual disability or death from a covered occupational disease, rather than only a diagnosis. Applying this interpretation to decedent's death in 1999, the ALJ further concluded that his disease did not "occur" within the meaning of § 8–46–104 until after the closure of the SIF for occupational diseases. Therefore, the ALJ held that employer was solely liable for claimant's death benefits. The Panel affirmed. We agree with the ALJ and the Panel.

In construing a statute, we must give effect to the legislative intent. *See Sears Distribution Ctr. v. Indus. Claims Appeals Office,* 104 P.3d 313 (Colo.App.2004). Hence, "occurring" should be given its plain and ordinary meaning, and the Workers' Compensation Act (Act) should be construed to give consistent, harmonious, and sensible effect to all its parts. *See Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023 (Colo.

2004). But if statutory language is fairly susceptible to more than one meaning, it is ambiguous, and we may resort to other aids in statutory construction, including the consequences of various constructions and any legislative history. *See Pena v. Indus. Claim Appeals Office,* 117 P.3d 84 (Colo.App. 2004).

The parties acknowledge, and we agree, that the question of when an occupational disease "occurs" for purposes of workers' compensation could be subject to various interpretations, and therefore, the term is ambiguous.

■ An occupational disease is not caused by a specific accident or trauma, but follows "as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment." Section 8–40–201(14), C.R.S.2005. Occupational diseases typically involve long latency periods, sometimes produce symptoms at times remote from the last exposure, and yet may eventually lead to disability or death. *See Henderson v. RSI, Inc., supra.* Thus, an occupational disease might be said to "occur" when the worker is injuriously exposed to the disease, when the disease is first diagnosed, when symptoms first appear, or when the disease becomes disabling (or, as here, causes death).

Because § 8–46–104 is ambiguous, we may consider its legislative history. But the parties concede that the legislative history does not explain the meaning of "occurring." This concession is consistent with extensive discussion of the legislative history in *Subsequent Injury Fund v. King, supra,* and *United Airlines, Inc. v. Industrial Claim Appeals Office,* 993 P.2d 1152 (Colo.2000).

Both parties also agree that claimant will be paid, either entirely by employer or partly by the SIF. Hence, we cannot resolve the ambiguity by liberally construing the Act to further its humanitarian purpose of assisting injured workers and their families. *See, e.g., Colo. Counties, Inc. v. Davis,* 801 P.2d 10 (Colo.App.1990), *aff'd sub nom. County Workers Comp. Pool v. Davis,* 817 P.2d 521 (Colo.1991).

The SIF urges us to affirm the Panel's order based on cases holding that compensability must be determined using the law in effect at the time a disease becomes disabling. *See Henderson v. RSI, Inc., supra* (determining that the decedent's average weekly wage should be based on the higher wage he earned in 1983, when he first became disabled by asbestos-induced cancer, rather than the lower wage he earned in 1977, when he was last injuriously exposed to asbestos); *see also City of Colorado Springs v. Indus. Claim Appeals Office*, 89 P.3d 504 (Colo.App.2004)(because an occupational disease is compensable only if it results in disablement, onset of disability is an appropriate test for determining when the limitation period begins to run in such cases); *Ortiz v. Charles J. Murphy & Co.*, 964 P.2d 595 (Colo.App.1998)(for purposes of determining the time for reopening an occupational disease claim, "date of injury" is date of onset of disability).

In contrast, employer focuses on cases allowing compensation to a claimant for predisability medical benefits. *See Wal–Mart Stores, Inc. v. Indus. Claims Office*, 989 P.2d 251, 253 (Colo.App.1999)(declining to apply "the onset of disability rule to block payment of medical expenses necessitated by a proven occupational disease before it has rendered a worker disabled or incapacitated"); *see also Leming v. Indus. Claim Appeals Office*, 62 P.3d 1015 (Colo.App.2002).

■ We are not persuaded by either line of authority. The issue before us does not involve predisability medical benefits, a dispute over compensability, or a statute of limitations. Rather, it concerns which of two potentially liable parties will pay death benefits. Moreover, "[t]he Act treats medical benefits and disability benefits differently for various purposes." *Wal–Mart Stores, Inc. v. Indus. Claims Office, supra*, 989 P.2d at 253.

■ The parties have not directed us to, nor have we found, an interpretation of "occurs" or "occurring" elsewhere in the Act under circumstances that would help resolve the ambiguity before us.

■ Nevertheless, the General Assembly is presumed cognizant of relevant judicial precedent when a statute is amended, and therefore the judicial construction previously placed on the statute is deemed to be approved to the extent the statute remains unchanged. *Renaissance Salon v. Indus. Claim Appeals Office*, 994 P.2d 447, 450 (Colo.App.1999).

■ "Rights and liabilities for occupational diseases under the Colorado Workmen's Compensation Act accrue at the time the disability for which compensation is sought occurs." *Mendisco & Urralbura Mining Co. v. Johnson*, 687 P.2d 492, 493 (Colo.App. 1984). This case involves allocation of a liability between employer and the SIF.

Hence, we conclude the General Assembly intended that for purposes of closing the SIF to further liability, an occupational disease "occurs" on the date of onset of the disability, rather than on the date of diagnosis. Holding that an occupational disease "occurs" on the date of diagnosis would not promote a harmonious reading of the statute. And as the division noted in *SCI Manufacturing v. Industrial Claim Appeals Office*, 879 P.2d 470 (Colo.App.1994), this interpretation neither renders noncompensable an otherwise compensable occupational disease nor excludes from liability for benefits the employer who has subjected the worker to the risk of disability.

*Subsequent Injury Fund v. King, supra*, does not mandate a different result. First, the precise issue in *King* was different from the issue here. In *King*, the SIF effectively conceded that the decedents' occupational diseases "occurred" before April 1, 1994, because the administrative record showed that diagnosis and disability were contemporaneous. Instead, the SIF contended that under the "rule of independence," the dependents' separate claims for death benefits did not "occur" until the dates of the deaths, after April 1, 1994. The division rejected the SIF's argument, holding that "it would be anomalous to interpret §§ 8–46–104 and 8–41–304(2) as imposing liability on the SIF for disability and medical benefits over $10,000 for those diseases that occurred before April 1, 1994, but not for the benefits resulting when the disease leads to a death after that

date." *Subsequent Injury Fund v. King, supra,* 961 P.2d at 578.

The division in *King* recited the Panel's finding that "the SIF was liable for all death benefits in excess of $10,000 because *diagnosis* of the lung cancer had occurred prior to April 1, 1994." *Subsequent Injury Fund v. King, supra,* 961 P.2d at 577 (emphasis added). But the division did not determine whether an occupational disease first occurs on the date of diagnosis or the date of onset of disability. Consequently, the remarks in *King* concerning the date of diagnosis are dicta. *See Main Elec., Ltd. v. Printz Servs. Corp.,* 980 P.2d 522, 526 n. 2 (Colo.1999)("Dictum is not the law of the case and is not controlling precedent.").

The order of the Panel is affirmed.

Judge MARQUEZ and Judge PICCONE concur.