No. 21526.

THE PUBLIC UTILITIES COMMISSION OF THE STATE OF
COLORADO *v.* COLORADO MOTORWAY, INC.
(437 P.2d 44)

Decided February 5, 1968.

1

2

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, ROBERT P. FULLERTON, Assistant, ROBERT LEE KESSLER, Assistant, for plaintiff in error.

DAVID BUTLER, HOLLAND and HART, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THE Public Utilities Commission of the State of Colorado (Commission) instituted on its own motion a proceeding "for the purpose of a general investigation of sightseeing and charter service covering services, authorities and the interpretation thereof * * * for the purpose of adopting rules and regulations therefor."

A notice of the hearing was sent to all parties in interest, well over one hundred in number, of whom twenty-three appeared and participated. One of those which appeared and participated in the hearing was Colorado Motorway, Incorporated (Motorway), owner of Private Permit B-277 and the defendant in error.

Following the conclusion of the hearing the Commission issued two decisions, one relating to rules governing sightseeing and charter operators, and the other, Decision No. 56824, relating to Permit B-277. We are concerned only with Decision No. 56824 (the decision).

It appears from the record that Permit B-277 was "unrestricted" so far as intrastate transportation of passengers was concerned, except as limited by statute. C.R.S. '53, 115-11-1(8)(b). The breadth of authority of Permit B-277 was altered and amended by the decision in these words:

"The Commission further finds, determines and interprets Private Carrier Permit No. B-277 to be for the: "Transportation of passengers by Charter or special bus from and to the City of Greeley, to and from all points in the State."

Being unhappy with the decision, Motorway, pursuant to C.R.S. '53, 115-6-15, applied to the district court for a writ of certiorari for the purpose of having the lawfulness of the decision inquired into.

The district court, in compliance with statutory edict (115-6-15), reviewed the record as certified to it by the Commission "to determine whether the Commission has [had] regularly pursued its authority, including a determination of whether the order or decision under review violates [violated] any right of the petitioner [Motorway] under the Constitution of the United States or of the State of Colorado, and whether the order of the Commission is [was] just and reasonable and whether its conclusions are [were] in accordance with the evidence * * *."

The district court reversed the order of the Commission. We affirm the judgment of the district court.

We can summarize Motorway's challenge in the district court to the legality of Decision No. 56824, so far as it is deemed necessary to a disposition of the issues here for review, thusly:

The Commission failed to comply with C.R.S. '53, 115-11-18, requiring, before revocation, alteration or amendment of a private permit, a hearing after notice of alleged violations of law, rules and regulations or the terms of the permit, by virtue of which failure the

Commission (1) did not regularly pursue its authority; (2) did not meet the minimum standards of due process and deprived petitioner of property without due process of law, in violation of the Constitutions of the United States and Colorado, and (3) its order was not just and reasonable.

The district court, in its findings, meticulously reviewed the entire proceedings before the Commission from the order instituting the investigation to the rendering of its decision.

An excerpt from the findings by the trial court is significant background for the rule of law which we apply in this decision. The trial court observed:

"The main part of the hearing concerned the conflicts between sight-seeing bus operators and the so-called charter bus operators. Much discussion by way of testimony appears in the record as to what is a sight-seeing operation and what is a charter operation, and there seems to be no unanimity of opinion on these questions.

"The Commission also considered complaints which the staff had received concerning the operation of Colorado Motorway, Incorporated, under Private Permit B-277. After many months of study the Commission announced two decisions, one concerning the disputes between sight-seeing and charter operators and the other concerning Permit B-277 * * *."

We would add that Louis J. Carter, Supervisor of Complaints and Investigations for the Commission, testified that he had received complaints from virtually every carrier participating in the hearing relating to violations by virtually every other carrier. In addition, in answer to questions relating to the background of the investigation, he testified that (Questions omitted for ease of continuity):

"This investigation arises because we have at the present time somewhat of a chaotic condition in the transportation [industry] under charter and sightseeing

particularly, ·and special bus service and auto livery service are also affected.

\* \* \*

"\* \* \* this hearing is for the benefit of the carriers concerned. We cannot operate as we are at the present time under the condition where *no one obeys any of the Commission's rules and regulations. Most of the carriers will take any transportation that is offered to them whether or not they have the proper authority* \* \* \*." (Emphasis added.)

The trial court in its findings concluded that Decision No. 56824 of the Commission could not withstand the statutory and constitutional challenges raised by Motorway. In passing, it observed that:

"The Petitioner here, Colorado Motorway, Incorporated, was not required to attend the hearing, nor was it given any express notice that its permit would even be considered at the hearing. Each time the operation of the Petitioner under Permit B-277 was questioned or discussed at the hearing before the Commission, Petitioner's Counsel objected on the ground that the Commission had no authority to make any rules or orders respecting the activities of Petitioner under Permit No. B-277.

"\* \* \* The holder of the permit had no notice that his permit might be changed from unrestricted to restricted. It was not charged with any transgressions regarding the use of the permit, nor was it asking a favor of the Commission by way of·seeking a transfer of its permit \* \* \*.

\* \* \*

"The Court finds that in rendering Decision No. 56824 in Case No. 5180 the Commission exceeded its authority, abused its discretion, and acted arbitrarily and capriciously."

The Commission, in justification if its Decision No. 56824, claims that:

"The Commission has broad constitutional and stat-

utory authority to regulate private carriers and such includes the authority to interpret permits previously issued by it."

And that:

"The Commission followed adequate procedural safeguards in making the interpretation involved here."

It also contends that its "interpretation" of Permit No. B-277 was correct and should be upheld "unless clearly erroneous." In our disposition of this appeal we do not reach this argument.

 There is no question, as an abstract proposition of law, that the Commission has broad constitutional and statutory authority. However, the breadth of that authority is to be tested by the statutes themselves and not by the unbridled whim of the Commission. The Commission is a creature of statute. Both the power and scope of its authority and its procedures are necessarily controlled by the Act upon which it relies. *Industrial Commission v. Plains Utility Company*, 127 Colo. 506, 259 P.2d 282; *Snell v. Public Utilities Commission*, 108 Colo. 162, 114 P.2d 563.

██ In its brief the Commission cites as authority for this broad power the case of *Denver & South Platte Railway Co. v. City of Englewood*, 62 Colo. 229, 161 P. 151, and *Public Utilities Commission v. City of Loveland*, 87 Colo. 556, 289 P. 1090. The first case was a contest between a municipality and the P.U.C. as to which had the authority to regulate a public utility operating within the municipality. The municipality relied upon a contract with the utility entered into prior to the creation of the P.U.C. The legislature had never delegated to cities and towns the power to regulate rates. The Commission, however, was subsequently given that power by the legislature and it prevailed. In its decision this court pointed out that

"* * * The law fully provides that every order or decision made by the commission, may be reviewed by

the Supreme Court * * * for the purpose of having the lawfulness of the order or revision determined."

■ The mere fact that the legislature provided for judicial review is indicative of its intention that the Commission adhere strictly to the law.

In the *Loveland* case, *supra,* the court noted:

"* * * it was clearly the intention of our General Assembly to give to the Utilities Commission complete control over public utilities so far as that could be done *under existing constitutional limitations* * * *." (Emphasis added.)

■ The Commission seeks to justify its Decision No. 56824 upon the basis of its recognized authority to interpret or clarify the scope of authority which it has theretofore granted. No one questions its authority to "interpret," nor for that matter to regulate, but Motorway has questioned whether the restrictions imposed under the guise of "interpretation" can be accomplished in a general investigation. The defendant in error contends that the Commission must proceed under C.R.S. '53, 115-11-8 and cites *Snell v. Public Utilities Commission, supra,* in support of its position.

This court, in *Snell,* stated:

"* * * It is elementary that a public utility commission derives its authority wholly from constitutional or statutory provisions, and possesses only such powers as are thereby conferred. 51 C.J., pp. 36, 37, § 78. Thus it is certain, under the facts alleged here, that the commission was without authority to amend or modify the original order, as was essayed, as a part of its action in passing upon the *application* for the rehearing sought. * * * It is equally obvious that if the attempted amendment of the first order is considered as being distinct and separate from the denial of the rehearing, the questioned action of the commission still cannot be justified, because, by section 49, supra, relating to the rescission, alteration or amendment of orders of the commission, such is required to be done 'upon notice to the public

utility affected, and after opportunity to be heard.' * * *.' "

■■ Likewise, in the case before us, the provisions of C.R.S. '53, 115-11-18, should have been strictly adhered to. In not doing so, the Commission exceeded its authority and it denied procedural "due process" to Motor-way in violation of both the federal and state constitutions.

*Armour Transportation Co. v. Pennsylvania Public U. Com'n.*, 138 Pa. Super. 243, 10 A.2d 86, an opinion which reviews "procedural due process," in quoting Hughes, J., in *Railroad Commission v. Pacific Gas & Electric Co.*, 302 U.S. 388, 393, held that in addition to a fair and open hearing, "There must be due notice and an opportunity to be heard," and "the procedure must be consistent with the essentials of a fair trial, and the Commission must act upon evidence and not arbitrarily." The court continued:

"The question of what is proper notice, or, as here, of what constitutes a specific designation of the issue raised or charges made, depends necessarily upon the facts of each case, the type of investigation being conducted, the violations alleged, and the penalty or order sought to be imposed. Where the purpose of the investigation by the Commission is only to determine the reasonableness of rates charged by a utility, a different standard would seem to apply than where the franchise of the utility is sought to be revoked for violation of the utility laws and a penalty or fine imposed."

See also, *Furniture Capitol T. Lines v. Michigan Pub. Serv. Com'n*, 340 Mich. 173, 65 N.W.2d 303; *Public Utilities Com'n v. Donahue*, 138 Colo. 492, 335 P.2d 285.

■■ The Public Utilities Commission, in a general investigation held for the purpose of promulgating rules and regulations, cannot, regardless of the type of evidence that may be presented to it, revoke, amend or alter permits or certificates of participating parties. It must comply with the statutory procedural requirements which would legally justify the end sought to be

accomplished, issue a notice, hold a hearing at which the respondent is given an opportunity to defend itself, and finally, enter its decision in accordance with the evidence. Anything less will not satisfy the statute nor that quality of fairness required by "procedural due process."

The trial court measured the proceedings before the Commission by the foregoing rule and found that it did not regularly pursue its authority, and that the rights of Motorway under the Constitutions of the United States and the State of Colorado were violated.

The judgment of the district court is affirmed.