AVALANCHE INDUSTRIES, INC., Great States Insurance Company c/o Colorado Insurance Guaranty Association, and Western Guaranty Fund, Petitioners,

v.

INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Gladys Louise Clark, Respondents.

No. 06CA0716.

Colorado Court of Appeals, Div. IV.

March 22, 2007.

Certiorari Granted Aug. 27, 2007.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Thomas L. Kanan, C. Adam Foster, Denver, Colorado, for Petitioners.

John W. Suthers, Attorney General, Mark N. McMullen, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Heuser and Heuser, LLP, Gordon J. Heuser, Colorado Springs, Colorado, for Respondent Gladys Louise Clark.

Opinion by Judge HAWTHORNE.

In this workers' compensation proceeding, Avalanche Industries, Inc., and its insurers, Great States Insurance Company and Western Guaranty Fund (collectively employer), seek review of a final order of the Industrial Claim Appeals Office (Panel) affirming the order of the administrative law judge (ALJ) that the average weekly wage (AWW) of Gladys Louise Clark (claimant) should be recalculated to reflect her higher earnings from a subsequent employer and to include the cost of her group health insurance. We affirm.

Claimant suffered an industrial injury in July 2000. Shortly thereafter, she was informed by employer that her group health coverage would terminate but that she could receive health and dental insurance benefits under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 42 U.S.C. § 300bb–1, et seq. (2006), at a cost of $78.90 per week. Claimant declined the available COBRA benefits because she received group health insurance benefits from a subsequent employer.

In March 2001, claimant commenced employment with her most recent employer.

On April 3, 2001, claimant was placed at maximum medical improvement. Following a division-sponsored independent medical examination, claimant received a twelve percent whole person permanent medical impairment rating.

In December 2001, employer filed a final admission of liability (FAL) admitting responsibility for claimant's twelve percent permanent impairment of her lumbar spine and her AWW of $415.63, which was based on claimant's salary at the time she left her employment with employer. Claimant did not contest the FAL, and her claim was closed.

In January 2003, claimant filed a petition to reopen her claim based upon a worsening of her condition. Following an evidentiary hearing, the ALJ found that claimant's condition had worsened between April and September 2001. He therefore granted claimant's petition to reopen, determining she proved that she had suffered an increase in symptoms that was related to her industrial injury. The ALJ awarded claimant temporary total disability (TTD) benefits at the admitted rate of $277.09 for the period February 3 to February 21, 2003. Employer appealed, but the ALJ's findings were upheld both by the Panel and later by another division of this court. *Avalanche Indus., Inc. v. Indus. Claim Appeals Office,* 2004 WL 2406674 (Colo.App. No. 04CA0636, Oct. 28, 2004)(not published pursuant to C.A.R. 35(f)).

In April 2005, claimant was taken off work by her authorized treating physician. On May 4, 2005, she was advised by her most recent employer that she was eligible to continue its group health care benefits under COBRA. She was also informed that her initial biweekly cost for the insurance would be $129.19, but that the biweekly cost would increase to $357.51, or $178.76 per week, after she had exhausted her available leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 1601, et seq. (2006).

At the time claimant was taken off work, her AWW from her most recent employer was $625.

On June 14, 2005, claimant filed an application for hearing and notice to set, endorsing the sole issue of AWW. A hearing was held on the issue on September 26, 2005. However, no evidence was presented at the hearing, and no witnesses were called. Rather, the

parties stipulated to the relevant facts. Each party presented argument at the hearing and submitted position statements and briefs to the ALJ.

Employer argued that claimant was not entitled to raise the issue of AWW because the issue had been closed in 2001 when claimant did not contest employer's FAL and it had not been reopened by the ALJ after the worsening of claimant's condition in 2003. Employer also argued that claimant was not entitled to the higher AWW based on a salary earned five years after she had left employer's employ, and that her AWW should not include the cost of health insurance benefits under COBRA offered by her most recent employer because she had not sought such benefits previously.

The ALJ disagreed with employer and awarded claimant an increase in AWW based on her weekly wage while employed by her most recent employer, including the cost of her most recent employer's group health insurance coverage. Claimant was thus awarded TTD benefits based on an AWW of $689.60 for the period April 18 to July 11, 2005, and $803.76 after July 11, 2005, when she would no longer be eligible for leave under FMLA from her most recent employer.

Employer appealed to the Panel, which affirmed the ALJ's determination. The Panel concluded that, contrary to employer's contention, the ALJ's 2003 order granting claimant's petition reopened claimant's entire award, not just issues pertaining to her medical benefits. The Panel also concluded that the ALJ had not abused his discretion in basing claimant's AWW on the salary she earned from her most recent employer, despite the fact that claimant had left her position with employer five years before her claim for an increase in her AWW, because the ALJ had the discretionary authority under § 8–42–102(3), C.R.S.2006, to increase claimant's AWW if equity so demanded. Finally, the Panel also upheld the ALJ's inclusion of the cost of claimant's most recent employer's group health plan, finding that the phrase "employer's group health insurance plan" in § 8–40–201(19)(b), C.R.S.2006, was broad enough to incorporate a claimant's subsequent employers.

## I.

Employer first argues that it was denied its rights to equal protection and due process guaranteed by the Colorado Constitution, art. II, § 25. Specifically, employer contends that its right to procedural due process was violated by the ALJ's failure to make adequate findings in his order, and that its right to equal protection was violated because the AWW statutes were applied differently to it than to other similarly situated employers that have not been required to compensate a claimant for AWW based on wages earned from a subsequent employer. We disagree with both arguments.

## A.

■ A party's right to procedural due process is met if the party is provided with notice and an opportunity to be heard. *Pub. Utils. Comm'n v. Colo. Motorway, Inc.*, 165 Colo. 1, 10, 437 P.2d 44, 48 (1968). The essence of procedural due process is fundamental fairness. *City & County of Denver v. Eggert*, 647 P.2d 216, 224 (Colo.1982).

However, here, employer is not alleging that it was denied proper notice or hearing. Its procedural due process claim rests solely on its contention that the ALJ's order was brief and did not make adequate findings.

■ It is axiomatic that where significant rights are at issue, the decisionmaker must state the reasons for his or her determination. *Mau v. E.P.H. Corp.*, 638 P.2d 777, 780 (Colo.1981). However, the Due Process Clause of the Colorado Constitution does not guarantee a party an order setting out every finding on which the order is based. Employer cites to no case, and we know of none, imposing an obligation to expound thoroughly on the reasons and findings underlying a decision. *Cf. Shafer Commercial Seating, Inc. v. Indus. Claim Appeals Office*, 85 P.3d 619, 621 (Colo.App. 2003)("the ALJ is not held to a crystalline standard of findings"). Because the Due Process Clause imposes no such require-

ment, we decline to impose such a burden on the ALJ.

### B.

The right to equal protection guarantees that persons who are similarly situated will receive like treatment under the law. *Harris v. The Ark*, 810 P.2d 226, 229 (Colo. 1991). A statute is unconstitutional "as applied" if it is applied with different degrees of severity to different groups of persons described by some suspect trait. *Pace Membership Warehouse v. Axelson*, 938 P.2d 504 (Colo.1997). A person alleging an equal protection violation has the burden of showing that the classification arbitrarily subjects similarly situated classes of persons to disparate treatment. *Indus. Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo.1996).

Employer contends that it is unlawfully singled out by being required to compensate claimant at a rate higher than her AWW when she left employer. However, employer cites to no examples of the pertinent AWW statutes being applied to other employers with a different degree of severity. Nor does employer contend that it is being treated differently from other similarly situated employers because it belongs to a group that is described by some suspect trait.

Employer argues that because neither claimant nor the Panel cites to any published case in which a similarly situated employer has also been required to pay an increased AWW based upon a subsequent employer's wage, no such examples exist. However, employer bears the burden of presenting evidence of disparate treatment; it is not the burden of the opposing party to come forward with examples of similarly treated persons. *See Pepper v. Indus. Claim Appeals Office*, 131 P.3d 1137, 1140 (Colo.App.2005), *aff'd sub nom. City of Florence v. Pepper*, 145 P.3d 654 (Colo.2006).

Claimant and the Panel argue that other employers have, in fact, been treated in the same manner as employer by being required to pay a claimant an AWW higher than the claimant earned at the time of the initial injury. In support of their argument, they rely upon *Pizza Hut v. Industrial Claim Appeals Office*, 18 P.3d 867 (Colo.App.2001), and *Campbell v. IBM Corp.*, 867 P.2d 77 (Colo.App.1993).

In *Pizza Hut, supra*, a claimant injured while delivering pizzas for his employer was awarded benefits based upon the higher AWW he earned from a subsequent employer. Employer argues that *Pizza Hut* is distinguishable because the employee worked contemporaneously for both employers for a short time, and, thus, the time between employers was much less in *Pizza Hut* than the five years here. We are not persuaded that this distinction is significant. In *Pizza Hut*, as here, the AWW was based upon higher wages earned by the claimant from a subsequent employer.

Moreover, employer's contention that the passage of time renders the imposition of higher, subsequent wages upon it inequitable, is vitiated by *Campbell v. IBM Corp., supra*. In that case, an employee's initial injury occurred ten years before her deteriorating condition caused her to cease working. Her employer argued that her AWW should be based on the wages she earned at the time of her initial injury, rather than the higher wages she had earned through salary increases and promotions during the intervening years. A division of this court determined that it would be "manifestly unjust to base claimant's disability benefits in 1986 and 1989 on her substantially lower earnings in 1979," and determined that her AWW should be based upon the higher salary earned at the time her deteriorating condition caused her to stop working. *Campbell v. IBM Corp., supra*, 867 P.2d at 82.

Thus, employer has not met its burden of demonstrating that its right to equal protection under the law has been violated.

### II.

Employer next contends that the Panel erred in affirming the ALJ's decision to award claimant an AWW based on the higher wage she earned from her subsequent employer because claimant had not petitioned to reopen the issue of AWW. We do not agree.

■ A claimant may petition to reopen an award if his or her condition changes or worsens. "At any time within six years after the date of injury, the director or an administrative law judge may, after notice to all parties, review and reopen *any award* on the ground of fraud, an overpayment, an error, a mistake, or a change in condition. . . ." Section 8–43–303(1), C.R.S.2006 (emphasis added). An award is an "order, whether resulting from an admission, agreement, or a contested hearing, which addresses benefits and which grants or denies a benefit. . . . After an award becomes final . . . no further benefits may be awarded unless there is an appropriate order to reopen the proceedings." *Burke v. Indus. Claim Appeals Office,* 905 P.2d 1, 2 (Colo.App. 1994).

■ To warrant reopening of an award on the ground of a "change in condition," a claimant must demonstrate a change in physical or mental condition, and not merely a change in economic condition. *Lucero v. Climax Molybdenum Co.,* 732 P.2d 642 (Colo. 1987).

■ Whether a party has met its burden of proof regarding a change in condition warranting reopening of an award is a question of fact, *Wilson v. Indus. Claim Appeals Office,* 81 P.3d 1117, 1118 (Colo.App.2003), and "is solely for the trier of fact to determine." *Metro Moving & Storage Co. v. Gussert,* 914 P.2d 411, 414 (Colo.App.1995). The reviewing court must uphold the ALJ's factual determinations if the decision is supported by substantial evidence in the record. *Christie v. Coors Transp. Co.,* 919 P.2d 857, 860 (Colo.App.1995), *aff'd,* 933 P.2d 1330 (Colo.1997).

■ Here, claimant's award was reopened by the ALJ in 2003 under § 8–43–303(1) based on a change in claimant's physical condition. The award remained reopened when claimant submitted her application for hearing and notice to set on the issue of AWW in 2005.

Employer argues that the order to reopen did not encompass AWW because it was not raised by claimant in her petition and the order addressed only the issues of medical benefits and TTD. The Panel disagreed, finding that once a petition to reopen is granted, an entire award is reopened, not just specific issues.

■ We agree with the Panel's reasoning. The express language of the statute provides that an ALJ "may . . . review and reopen any award." Section 8–43–303(1). This language is distinct from a later subsection of the statute that expressly addresses the reopening of "medical benefits." Section 8–43–303(2)(b), C.R.S.2006. Because we must give full effect to the statutory language chosen by the General Assembly whenever possible and must assume that no word in a statute is superfluous, we conclude that the difference in terms between the subsections of the reopening statute is not inadvertent. *See Spahmer v. Gullette,* 113 P.3d 158, 162 (Colo.2005). Under the plain language of the statute, a reopening under § 8–43–303(1) reopens an "award" and not just specific issues raised by a claimant in a petition to reopen.

The ALJ therefore properly determined that claimant's entire award had been reopened and that claimant was entitled to seek an increase in her AWW.

### III.

Employer next contends that the Panel erred in affirming the ALJ's award of benefits based on claimant's AWW earned from her most recent employer because the AWW must be calculated based only upon claimant's wages at the time of the injury. Again, we disagree.

Compensation benefits are calculated based upon an injured employee's AWW. Section 8–42–102(1), C.R.S.2006. The term "wages" is defined by the Workers' Compensation Act (the Act) as "the money rate at which the services rendered are recompensed under the contract of hire in force at the time of the injury." Section 8–40–201(19)(a), C.R.S.2006.

■ However, ALJs are granted broad discretion in determining "whether the circumstances of a particular case require [an ALJ] to employ an alternative method of

computing compensation benefits based upon the employee's [AWW]." *Coates, Reid & Waldron v. Vigil,* 856 P.2d 850, 855 (Colo. 1993). Indeed, the Act provides that "in each particular case, [the ALJ] may compute the [AWW] of said employee in such other manner and by such other method as will, in the opinion of [the ALJ] based upon the facts presented, fairly determine such employee's [AWW]." Section 8–42–102(3), C.R.S.2006.

> The entire objective of wage calculation [under the Act] is to arrive at a fair approximation of the claimant's wage loss and diminished earning capacity. Although [AWW] generally is determined from the employee's wage at the time of injury, if for any reason this general method will not render a fair computation of wages, the administrative tribunal has long been vested with discretionary authority to use an alternative method in determining a fair wage.

*Campbell v. IBM Corp., supra,* 867 P.2d at 82 (citation omitted).

 Wage calculations are reviewed under an abuse of discretion standard. To be set aside, the ALJ's wage calculation must be shown to exceed the bounds of reason. *Coates, Reid & Waldron v. Vigil, supra,* 856 P.2d at 856 (citing *Rosenberg v. Bd. of Educ.,* 710 P.2d 1095, 1098–99 (Colo.1985)). In resolving whether a wage calculation exceeds the bounds of reason, reviewing courts "may specifically consider whether an award is supported by the applicable law." *Coates, Reid & Waldron v. Vigil, supra,* 856 P.2d at 856.

██ Here, the ALJ did not abuse his discretion in determining that claimant's AWW should be calculated based upon her wages nearly five years after she initially sustained her injury. While the ALJ's wage calculation substantially increased claimant's AWW, it reflected an increase in wages that claimant would have continued to receive if not for the industrial injury she sustained while working for employer. In our view, the ALJ's wage calculation was a fair approximation of claimant's wage loss. *See Campbell v. IBM Corp., supra,* 867 P.2d at 82.

Moreover, we disagree with employer's contention that the factual differences between claimant's situation and the situation in *Pizza Hut v. Industrial Claim Appeals Office, supra,* render that decision inapplicable. Both here and in *Pizza Hut,* the claimant's AWW calculation was based on wages earned from a subsequent employer for which the claimant worked after the initial injury. Although the claimant in *Pizza Hut* concurrently held his positions for a short period, the principle permitting wages to be calculated based on earnings from a subsequent employer, and not upon wages earned at the time of injury, applies here. *See Pizza Hut v. Indus. Claim Appeals Office, supra,* 18 P.3d at 869; *see also Campbell v. IBM Corp., supra,* 867 P.2d at 82 (upholding the calculation of AWW based upon a claimant's higher earnings at the time her condition worsened and she ceased working, which was ten years after her initial injury).

We therefore cannot say that the Panel erred or that the ALJ abused his discretion in awarding claimant benefits based upon her AWW from her most recent employer.

## IV.

Finally, employer contends that the Panel erred in affirming the ALJ's order including claimant's cost of COBRA benefits in the AWW calculation. We are not persuaded.

### A.

██ Employer initially argues that claimant must have actually purchased COBRA insurance for that cost to be included in her AWW and the record contains no evidence that claimant purchased COBRA insurance from any employer. We are not persuaded.

The Act's definition of wages expressly includes "the employee's cost of continuing the employer's group health insurance plan and, upon termination of the continuation, the employee's cost of conversion to a similar or lesser insurance plan." Section 8–40–201(19)(b). "Continuation," on the one hand, refers to the employee's "right to continue the existing coverage upon termination or other qualifying reasons for a period of eighteen months at the group rate"; "conver-

sion," on the other hand, refers to an employee's ability "to obtain a policy from the employer's insurer following the expiration of the continued coverage." *Midboe v. Indus. Claim Appeals Office*, 88 P.3d 643, 645 (Colo. App.2003), *overruled in part by Indus. Claim Appeals Office v. Ray*, 145 P.3d 661 (Colo.2006).

Employer did not have the benefit of *Industrial Claim Appeals Office v. Ray, supra*, when it submitted its briefs in this case. In *Ray*, the supreme court held that "the actual purchase of health insurance is not required in order for the cost of such benefits to be included in the calculation of a claimant's [AWW]." *Indus. Claim Appeals Office v. Ray, supra*, 145 P.3d at 662. The court's conclusion is based upon its reading of the plain language of § 8–40–201(19)(b). *Indus. Claim Appeals Office v. Ray, supra*, 145 P.3d at 668 (plain language of statute says nothing to require purchase of health insurance for cost of insurance to be included in AWW).

We conclude that the ALJ correctly determined that claimant's cost of continuing health insurance coverage should be included in her AWW despite her decision not to purchase continuing coverage from employer.

### B.

■ Employer further argues that even if the ALJ correctly included the cost of claimant's COBRA coverage in her AWW, the cost should have been based on such coverage from employer rather than from claimant's most recent employer.

To support its contention, employer relies on *Sears Roebuck & Co. v. Industrial Claim Appeals Office*, 140 P.3d 336 (Colo.App.2006). That case held the definition of "wage" in the Act, which permits the inclusion of "the employee's cost of continuing the employer's group health insurance plan" in the calculation of an employee's AWW, "clearly refers to the employer at the time of the industrial injury." *Sears Roebuck & Co. v. Indus. Claim Appeals Office, supra*, 140 P.3d at 338. Based on this holding, employer contends that claimant's cost of continuing health insurance coverage must be limited to her cost at the time she ceased working for employer,

which cost was significantly less than when she was taken off work in 2005.

The Panel determined that the statutory term "employer" is broad enough to encompass subsequent employers. In light of the definition in *Sears Roebuck*, we agree that the Panel's interpretation of "employer" is overly broad.

However, we do not agree that the ALJ's outcome need be set aside. As we note above, an ALJ is granted broad discretion in calculating a claimant's AWW, and that discretion will not be disturbed absent a showing that the calculation exceeds the bounds of reason and is not supported by the applicable law. *Coates, Reid & Waldron v. Vigil, supra*, 856 P.2d at 856. If calculation of an employee's wages at the time of injury does not provide a fair approximation of an employee's wage loss and diminished earning capacity, the ALJ is vested with the discretionary authority to use an alternative method to determine a fair wage. *Campbell v. IBM Corp., supra*, 867 P.2d at 82.

For the reasons stated in part III above, we do not perceive the inclusion of claimant's subsequent cost of COBRA benefits to be an abuse of discretion or a misapplication of the law in this case. Claimant was able to work for five years after sustaining her industrial injury. Within that time, the higher COBRA rate reflects an increase in insurance premiums. To base claimant's AWW on the higher wage she earned with her most recent employer, but disregard the increase in her insurance cost, would not result in a fair approximation of claimant's wage loss and diminished earning capacity and would cause her to incur an expense she would not have incurred but for the industrial injury she sustained while working for employer.

Thus, we cannot conclude that the Panel erred or the ALJ abused his discretion in awarding claimant benefits based upon the inclusion of the cost of continuing her most recent employer's group health insurance plan.

The order is affirmed.

Judge CASEBOLT concurs.

Judge BERNARD concurs in part and dissents in part.

Judge BERNARD concurring in part and dissenting in part.

I concur with the results reached in parts I, II, and IV.A of the majority opinion. I respectfully dissent from the results reached in parts III and IV.B.

I agree a claimant may move to reopen the original award based upon a change in the claimant's physical condition. Section 8–43–303, C.R.S.2006; *Lucero v. Climax Molybdenum Co.*, 732 P.2d 642, 647 (Colo.1987). In such a reopening, the claimant's award may be changed because the claimant has become permanently partially or totally disabled, subject to the requirements of §§ 8–42–107, 8–42–107.5, and 8–42–111, C.R.S.2006, or for other reasons, such as the inclusion of the cost of insurance premiums in the award as now required by *Industrial Claim Appeals Office v. Ray*, 145 P.3d 661 (Colo.2006).

However, it is my position that any award based on claimant's average weekly wage (AWW) must be calculated by referring to the remuneration claimant was receiving at the time of the injury, rather than the remuneration claimant was receiving at the time the award was reopened. This time factor would also apply to the calculations necessary to determine the amount of the insurance premiums required by *Ray, supra*. Therefore, I would reverse the order as it pertains to the method of calculating claimant's AWW and the insurance premiums.

## I. Scope of Review

The validity of an award based upon a legal conclusion drawn by the Industrial Claims Appeals Office (Panel) from undisputed facts is subject to our review. *Coates, Reid & Waldron v. Vigil*, 856 P.2d 850, 856 (Colo.1993). This court may set aside an order of the Panel if the award of benefits "is not supported by applicable law." Section 8–43–308, C.R.S.2006.

## II. Statutory History

The statutes requiring that an injured employee's AWW be used as the basis for computing workers' compensation benefits have a long history. As early as 1919, the legislature indicated an employee's AWW was the basis for computing benefits.

This law stated that wages "shall be construed" as the "money rate at which the services rendered are recompensed under the contract of hire in force at the time of the accident." The AWW was computed by referring to the total amount the employee earned for six months before the accident and dividing this sum by twenty-six. If this computation would not "fairly compute" the AWW because an employee had not worked long enough for the computation to be fair, or for "any other reason," the AWW could be computed by referring to the employee's daily earning or "any other method" that would "fairly compute" the employee's AWW. Colo. Sess. Laws 1919, ch. 210, § 47 at 716–17.

In November 1936, Colorado's voters approved a measure submitted to them by the General Assembly in which the means for computing the AWW was expanded to include employees paid by the month, the week, the day, or the hour. All these subsections included a reference to the remuneration received at the time of the accident. The language that wages "shall be construed" as the compensation rate in effect at the time of the accident was modified by the phrase, "except as hereinafter provided." The reference to allowing other modes of calculation when the specified ones would not fairly compute the AWW for any other reason was unchanged. Colo. Sess. Laws 1937, ch. 275, § 1 at 1380–83.

This structure has remained substantially the same for the past seventy years, C.S.A. 1935, ch. 97, § 326; § 81–8–1, C.R.S.1953; § 81–8–1, C.R.S.1963; § 8–47–101, C.R.S. 1973, and was not altered by the major revision of the workers' compensation statutes in 1990. *See* Colo. Sess. Laws 1990, ch. 62, §§ 8–40–201(19), 8–42–102 at 470, 486–87.

The computation of benefits is still based upon the AWW. Section 8–42–102(1), C.R.S. 2006. The word "wages" still "shall be con-

strued" to mean the employee's compensation at the time of the injury. Section 8–40–201(19)(a), C.R.S.2006. The various modes of calculation—based on whether the employee is paid monthly, weekly, daily, or hourly—still reflect the remuneration the employee was receiving at the time of the injury, "except as provided in this section." Section 8–42–102(2), C.R.S.2006. Each of these subsections contains a further reference to the wages the employee was receiving at the time of the accident or the time of the injury. Section 8–42–102(2)(a)–(d), C.R.S.2006.

The subsection concerning calculation of AWW when the enumerated methods would render an unfair result is also fundamentally unchanged since 1937. Section 8–42–102(3), C.R.S.2006, states:

> Where the foregoing methods of computing the [AWW] of the employee, by reason of the nature of the employment or the fact that the injured employee has not worked a sufficient length of time to enable earnings to be fairly computed thereunder or has been ill or has been self-employed or *for any other reason, will not fairly compute the* [AWW], the division, in each particular case, may compute the [AWW] of said employee in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's [AWW].

(Emphasis supplied.)

### III. Supreme Court Interpretation

Echoing the express language of a statutory structure that has remained basically unchanged, the supreme court has, at least four times, stated that the basis for calculating the AWW is the wage in effect at the time of the injury. At the time of each of these decisions, as indicated above, the workers' compensation statutes included a provision allowing a different method of calculation if the statutory methods would be unfair for "any other reason."

*Roeder v. Industrial Commission,* 97 Colo. 133, 46 P.2d 898 (1935), concerned interpretation of the term "wages" for purposes of calculating temporary disability awards. The supreme court determined the legislative direction was clear:

> The General Assembly has given us a rule of interpretation. It says where the word "wages" is used ... it shall be construed to mean *"money rate* at which the services are recompensed under the contract of hire in force *at the time of the accident."*

*Roeder v. Indus. Comm'n,* 97 Colo. at 135, 46 P.2d at 899.

In *State Compensation Insurance Fund v. Lyttle,* 151 Colo. 590, 593, 380 P.2d 62, 64 (1963), the court similarly relied on the wages at the time of the accident:

> [T]he term "earning capacity" [the statutory predecessor to AWW in the temporary partial disability statute] must be related to the money rate at which the services are recompensed under the contract of hire at the time of the accident.
>
> To hold otherwise would ... result in many instances in the preposterous situation of granting larger benefits to an injured employee for temporary partial disability than he could receive if he were temporarily totally disabled.

A division of this court concluded this construction of the term "earning capacity" was sufficiently definitive that it should govern the analysis of a substantially similar successor statute. *Sterling Colo. Beef v. Baca,* 699 P.2d 1347, 1348 (Colo.App.1985)("It is thus clear that it was the legislative intent to use the [AWW] *at the time of the injury* as the basis for determining benefits throughout the Workmen's Compensation Act." (emphasis supplied)).

The supreme court described the benefits of certainty in the AWW calculation in *Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982):

> In order to effectuate the [Workers' Compensation] Act's basic goals of speedy and reliable compensation of injured workers, the General Assembly has enacted a formula which calculates awards to an injured worker based on loss of earning power *at the time of injury.* The formula allows all parties involved to determine with some degree of certainty the amount of compensation to which the worker is entitled. Not only does this certainty aid the parties

in reaching prompt agreement on compensation issues, it also aids the state insurance compensation fund and other insur[e]rs in setting employer premiums.

*Bellendir v. Kezer, supra,* 648 P.2d at 647 (citation omitted).

When addressing how to calculate the AWW when a previously injured employee suffers a subsequent injury, the supreme court noted in *Coates, supra,* that "in those instances where an employee who is paid on a weekly basis has incurred a single disabling injury, the claimant's disability benefits are derived from his or her [AWW] in effect *at the time of the subject injury." Coates, Reid & Waldron v. Vigil, supra,* 856 P.2d at 855 (emphasis supplied).

### IV. Proper Scope of *Coates*

Despite this clear statement, *Coates* has been read, at least once, as a departure from the principle that the computation of AWW must be based upon remuneration earned at the time of the injury. At least one commentator has suggested that *Coates* abandoned, "in the name of equity, two statutory prescriptions indicating that the claimant's [AWW] should have been determined based on her earnings at the time of the second injury." David P. Cain, *Time, Equity and the Average Weekly Wage,* 23 Colo. Law. 1831, 1831–32 (Aug.1994).

I respectfully disagree with this comment based upon the following analysis. Before July 1, 1991, the immediate predecessor to current § 8–42–104(1), C.R.S.2006, stated:

> The fact that an employee has suffered a previous disability or received compensation therefor shall not preclude compensation for a later injury or for death, but in determining compensation for the later injury or death, the employee's average weekly earnings shall be such sum as will reasonably represent the employee's average weekly earning capacity at the time of the later injury and shall be arrived at according to and subject to the limitations in [the predecessor statute to § 8–42–102].

Colo. Sess. Laws 1990, ch. 62, § 8–42–104(1) at 490.

Relying on this language, a division of this court reversed an ALJ's conclusion that for the purposes of awarding permanent total disability benefits to an employee who suffered separate injuries while working for the same employer, the AWW should be based upon the employee's lower income at the time of the second injury. *Vigil v. Indus. Claim Appeals Office,* 841 P.2d 335 (Colo. App.1992), *aff'd in part and rev'd in part, Coates, Reid & Waldron v. Vigil, supra.* The division concluded the claimant's AWW should have been based upon the higher salary the claimant earned at the time of the first injury.

In *Coates, supra,* 856 P.2d at 855, the supreme court affirmed the division's conclusion that the predecessor of § 8–42–102(3) granted ALJs "broad discretion" to determine whether circumstances justified using "an alternative method of computing compensation benefits based upon the employee's [AWW]" when these methods were unfair for "any other reason."

However, the supreme court reversed the *Vigil* division's ruling that this discretion should have been used to base the claimant's AWW on her higher income earned at the time of her earlier injury, instead of her lower income earned at the time of her subsequent injury. By doing so, the supreme court did not endorse an exercise of discretion that would disconnect the calculation of an employee's AWW from remuneration received at the time of the injury. Instead, the supreme court simply held:

> Where there are such unique circumstances as those presented herein, and where the standard statutory methods of computing a claimant's [AWW] work a gross inequity to the claimant, we hold that [the predecessor to § 8–42–102(3)] provides an appropriate and fair solution, and is to be taken into consideration by the ALJ in such instances.

*Coates, Reid & Waldron v. Vigil, supra,* 856 P.2d at 857.

*Coates* did not signal a departure from the requirement that the computation of AWW must be tied to the remuneration an employee receives at the time of the injury. Rather, Coates was simply one case in a series

recognizing that when the methods of calculating AWW found in § 8–42–102(2)(a)–(d) are too confining, ALJs are free to look to other methods, as long as those methods are focused on determining a fair level of compensation based upon what the employee was earning, or was previously capable of earning, at the time of the injury.

The supreme court was careful in *Coates* to state the basic principle and to cite *Bellendir v. Kezer, supra,* the opinion enumerating the important public policy reasons for linking the calculation of AWW with remuneration received at the time of the injury. There is no suggestion this principle was rejected or criticized; rather, it was affirmed.

This affirmation is made even clearer by the manner in which the supreme court distinguished *Dugan v. Industrial Commission,* 690 P.2d 267 (Colo.App.1984). Dugan was laid off from a carpenter's job. He took a lower paying welder's job and was injured after working as a welder for two days. He argued his AWW should be based upon the wages he received as a carpenter.

The *Dugan* division first cited the principle that the basis for determining AWW is the remuneration paid at the time of the injury. Then the division concluded the discretion contained in the predecessor to § 8–42–102(3) should not be used to calculate the employee's award based upon his previous wages as a carpenter, because it would be unfair to the welding company to award compensation based upon a higher hourly rate than it paid the employee.

The *Coates* court distinguished *Dugan* in this way:

[T]he claimant [in *Dugan]* had not suffered any injury while employed in his higher-paid position, and only became injured after he had commenced working in the latter employment position; thus there was no evidence that, absent the single injury, he would have earned more than the amount of his wages at the later, lower-paying position.

*Coates, Reid & Waldron v. Vigil, supra,* 856 P.2d at 856 n. 8.

This distinction is consistent with the statutory mandate that the AWW is to be computed based upon the remuneration received at the time of the injury. Dugan was not injured when he received the higher wage. Thus, the ALJ did not have discretion under § 8–42–102(3) to tie Dugan's award to the higher wage he received at a different job before his injury.

Further, when indicating that the phrase "for any other reason" found in § 8–42–102(3) provides broad discretion to ALJs to employ alternative methods of calculation, the supreme court cited one supreme court decision and three opinions from divisions of this court: *Williams Bros. v. Grimm,* 88 Colo. 416, 297 P. 1003 (1931); *Drywall Products v. Constuble,* 832 P.2d 957 (Colo.App. 1991); *R.J.S. Painting v. Industrial Commission,* 732 P.2d 239 (Colo.App.1986); and *Western Sizzlin Steak House v. Axton,* 701 P.2d 96 (Colo.App.1984). Each of these cases authorized departing from the specific formula included in the relevant subsection of § 8–42–102(2)(b), but none of them suggested the alternative calculation should be divorced from compensation received at the time of the injury.

Instead, in *Williams Bros. v. Grimm, supra,* the employee worked for the fifteen weeks before his injury, but was on vacation, inferred by the court to be "forced" because of the winter, for the eleven weeks immediately preceding this period. The computational method contained in the predecessor statute to § 8–42–102(2)(b) required the AWW to be determined by dividing the total amount the employee earned during the six months before the injury by twenty-six weeks. Because the supreme court concluded it would be unfair to "penalize" the employee for the forced vacation, the court approved the use of the discretion contained in the predecessor statute to § 8–42–102(3) to increase the period of time the employee worked to the full twenty-six weeks. However, the computation was still conducted based upon the total amount the employee earned before the injury, not upon any subsequent wage rate.

To avoid unfair underpayment of benefits, the ALJ in *Drywall Products v. Constuble, supra,* retroactively applied the piecework rate the employee had begun to earn shortly

before his injury. To avoid unfair overpayment of benefits, the ALJs in *R.J.S. Painting, supra,* and *Western Sizzlin Steak House v. Axton, supra,* used the hourly rate the employee was earning at the time of the injury, but multiplied it by the actual hours worked per week, rather than a forty-hour week. In each of these cases, the rate of pay was derived from what the employee was making per hour or per piece at the time of the injury, but was multiplied by a different number of hours worked or pieces made to reach a fair result. *See also Univ. Park Holiday Inn v. Brien,* 868 P.2d 1164 (Colo.App.1994)(calculation predicated on earnings at the time of the injury put a ceiling on the employee's temporary partial disability benefits); *Hendricks v. Indus. Claim Appeals Office,* 809 P.2d 1076, 1079 (Colo.App.1990) (temporary partial disability case) ("We hold that if a simple comparison between pre-injury and post-injury wages would distort the loss of earning capacity attributable to the injury, then the claimant's post-injury wage must reflect the wage level in effect at the time of injury.").

*Coates,* therefore, reaffirmed the connection between the calculation of AWW and the level of remuneration at the time of the injury, rather than abandoned it. Thus, I submit the supreme court merely indicated that

§ 8–42–102(2) may be read as establishing a rule that the claimant's earnings at the time of the injury are paramount in determining the wage, while [§ 8–42–102(3) ] grants the ALJ the authority to alter the specific statutory methods of calculating the wage when, for various reasons, they do an injustice to a particular worker.

Cain, *supra,* 23 Colo. Law. at 1832.

## V. Legislative Emphasis

Effective July 1, 1991, the legislature amended § 8–42–104(1) by removing the reference to the statute preceding § 8–42–102, and by requiring the employee's earnings "at the time of the later injury" be used in calculating the employee's compensation. A division of this court determined this amendment was designed to change "the prior law" reflected in *Vigil, supra,* and "to require that

benefits payable to a disabled employee for a later injury be based upon the employee's [AWW] at the time of the later injury." *Platte Valley Lumber, Inc. v. Indus. Claim Appeals Office,* 870 P.2d 634, 636 (Colo.App. 1994).

Further, in 1991 the legislature also amended the temporary partial disability statute discussed in *State Compensation Insurance Fund v. Lyttle, supra.* The General Assembly removed the reference to "earning capacity" as the basis for determining benefits, and substituted the phrase "the difference between [the AWW] at the time of the injury and [the AWW] during the continuance of the temporary partial disability." Colo. Sess. Laws 1991, ch. 219, § 8–42–106 at 1306.

This change indicates the legislature meant what it has said since 1919, and particularly since 1937: the AWW is computed based upon what the employee was earning at the time of the injury, not at any other time.

## VI. *Campbell* and *Pizza Hut*

Claimant relies heavily on *Campbell v. IBM Corp.,* 867 P.2d 77 (Colo.App.1993), and *Pizza Hut v. Industrial Claim Appeals Office,* 18 P.3d 867 (Colo.App.2001). In my view, this reliance is misplaced.

In *Campbell,* the employee was injured at her job in 1979. She continued to work for ten years, during which her condition worsened. She then she stopped work. She suffered three periods of temporary total disability during this ten-year span.

To determine the employee's AWW for purposes of a temporary total disability award, the ALJ based the award on the wages the employee earned at the time of the injury in 1979. Relying on § 8–42–102(3), the division reversed, concluding it would be unjust to base the employee's wages on her lower earnings at the time of the injury, rather than on the wages she earned at the time of her subsequent disabilities.

However, before reaching this conclusion, the division determined the employee suffered from an occupational disease, rather than an accidental injury. Although the divi-

sion "d[id] not agree that this issue is determinative of the claimant's [AWW]," it also noted, "in cases of occupational disease, the 'time of injury' is generally held to be the time of last exposure or onset of disability." *Campbell v. IBM Corp., supra,* 867 P.2d at 81.

The employee in *Pizza Hut* was injured while delivering pizzas. He subsequently obtained a second job working at a hospital and worked concurrently at both jobs for two weeks. He then voluntarily quit the delivery job. The division affirmed the ALJ's order requiring the pizza company to pay the employee benefits based on the AWW of his hospital income, rather than his delivery income.

The division concluded § 8–42–102(3) provided the ALJ with discretion to reach this result, "although the record contains evidence that could have supported the calculation of claimant's [AWW] based upon his earnings at the time of the injury." *Pizza Hut v. Indus. Claim Appeals Office, supra,* 18 P.3d at 870. The division stated it did not matter, for purposes of calculating the employee's AWW, that the employee was not concurrently employed by the pizza company and the hospital when the employee was injured. *See Broadmoor Hotel v. Indus. Claim Appeals Office,* 939 P.2d 460 (Colo. App.1996).

*Campbell* is distinguishable from this case because of the division's conclusion the employee suffered from an occupational disease. Based on that conclusion, as the division pointed out, the time of the injury was the last onset of disability. As the employee's last onset of disability in *Campbell* was in 1989, basing her AWW, in whole or in part, on her 1989 income would not violate the requirement of calculating awards based upon wages paid at the time of the injury.

Even assuming *Campbell* can be cited as support for the proposition that an ALJ has discretion to depart from remuneration received at the time of injury when calculating the AWW, I respectfully submit *Campbell* and *Pizza Hut* were incorrectly decided.

The division in *Campbell* did not have the benefit of the supreme court's decision in *Coates,* which was issued approximately one month later. The division in *Pizza Hut* cited *Coates,* but only for the general proposition that ALJs have discretion when choosing alternative methods for computing the AWW.

*Campbell* and *Pizza Hut* do not refer to the extensive statutory history of the linkage of AWW to remuneration at the time of the injury. As indicated above, the legislature reendorsed this linkage when it passed the general revisions to the workers' compensation statutes in 1990 and when it amended the subsequent injury law in 1991.

It is a general principle that the legislature is aware, when amending a statute, of prior judicial construction of the statute. The legislature is deemed to have approved the construction to the degree the statute remains unchanged after being amended. *See Union Carbide Corp. v. Indus. Claim Appeals Office,* 128 P.3d 319 (Colo.App.2005).

Here, however, there is extensive statutory history announcing a legislative intention, and substantial judicial construction of those statutes, clearly contrary to the result claimant argues is required by *Campbell* and *Pizza Hut.* These two cases are of recent vintage, and they contradict the "long-continuing contemporaneous construction" by the legislature, the supreme court, and divisions of the court of appeals. *See Schlagel v. Hoelsken,* 162 Colo. 142, 147, 425 P.2d 39, 42 (1967).

*Campbell* and *Pizza Hut* do not discuss *Roeder v. Industrial Commission, supra; State Compensation Insurance Fund v. Lyttle, supra; and Bellendir v. Kezer, supra. Pizza Hut* does not analyze the effect of those cases upon *Coates,* or recognize the limitations upon *Coates's* scope based upon the language of and authorities cited in that opinion.

It is, therefore, my conclusion that *Campbell* and *Pizza Hut* are unsupported by statute or case law. These two cases do not represent a settled judicial perspective on this issue; rather, they are a departure from that settled judicial perspective.

VII. Conclusion

*Bellendir v. Kezer, supra*, explains why linking the AWW to the employee's remuneration at the time of the injury is important. Such a link provides employers and employees with sufficient certainty to agree on prompt awards, and it gives insurers a predictable basis for setting insurance premiums for employers.

Claimant's position undermines these goals by introducing a significant level of uncertainty. An employer can predict an employee's injury may degenerate over time and result in reopening the award. However, employers and insurers will have great difficulty in setting premiums if the calculation of the AWW is based on a wage figure that did not exist at the time of the injury. The incentive to settle claims promptly will diminish, as employers and insurers will be unsure about their ultimate financial responsibility to employees.

Employees may also be adversely affected by claimant's position. If an employee is making a *lower* wage at the time the claim is reopened, then an ALJ would be free, under this reasoning, to reduce the employee's award by calculating the AWW based upon the lower amount of the recent salary.

Thus, I respectfully conclude that, for the reasons set forth above, claimant's position undercuts the stability of a system that has been in place for over eighty years. If this sort of sweeping change is to be made; it should be made by the legislature, not the courts.